<hr />

## IRA GREGORY *vs.* JOHN BROOKS.

Where one is injured by the wrongful act of another, and others are indirectly and consequentially injured, but not by reason of any natural or legal relation, the injuries of the latter are too remote to constitute a cause of action.

But the rule is different where the injury is done to one with a malicious or fraudulent design to injure another through a contract relation.

A declaration alleged that the defendant falsely and fraudulently represented himself to be a superintendent of wharves, and as such ordered the captain of a vessel which was discharging at the plaintiff's wharf to remove therefrom, by which the plaintiff lost the profit that he was to have received for the use of his wharf, and which he would otherwise have received; which acts of the defendant were falsely and fraudulently done with intent to injure the plaintiff and defraud him of his just profit from the use of his wharf. Held that the declaration set forth a good cause of action.

Where the court charged the jury that it was not enough for the defendant simply to have believed that he had authority to make the order complained of and to have made the same in good faith, but that he was bound to act with reasonable caution, it was held that the charge was erroneous, as there could be no recove-

ry unless the defendant had acted with a malicious and fraudulent design to injure the plaintiff.

TRESPASS ON THE CASE, brought to the city court of the city of Bridgeport. The first count of the declaration was as follows :—

That on the 23d day of September, 1866, the plaintiff was and has ever since been the owner and in the possession of a certain wharf situated in said city of Bridgeport, [describing it;] that on said day a certain brig, named the Brilliant, of St. Johns, Nova Scotia, having on board a cargo of four hundred tons of coal for the Bridgeport Gas Light Company, arrived in Bridgeport harbor, and was brought and moored to said wharf with the consent of the plaintiff by the captain for the purpose of discharging said cargo upon said wharf; that on said day the captain commenced to discharge said cargo, and on that day and on the 24th and 25th days of said September, did discharge upon said wharf about one-half of said cargo ; that on the 25th day of September he had his said vessel still moored to said wharf with intent to discharge the remainder of said cargo thereon, and to remain moored there until said cargo was fully discharged, and was then and there at about the hour of nine o'clock of said day employed in making such discharge ; that the plaintiff, as the owner of the wharf, as aforesaid, was entitled to demand and receive for the use of said wharf from said captain, the sum of three dollars per day for every day said brig should remain at said wharf, and the sum of one cent per ton for every ton of coal discharged thereon, and said captain was bound to pay the same, and said brig was holden for the payment thereof, and said captain had promised, expected, and intended, and was able, ready and willing, to pay the same to the plaintiff; that the plaintiff had made a contract with said Gas Light Company to carry said cargo of coal with his horses and carts from said wharf to the gas works of the said company, for the sum of fifty cents per ton for the transportation thereof, which said sum the said company had promised the plaintiff to pay to him and intended and were able

and willing to pay to him for such transportátion ; that the plaintiff under his contract aforesaid had transported to said gas works so much of said cargo as had been discharged upon the wharf as aforesaid, and on said 25th day of September, at about the hour of nine o'clock as aforesaid, then and there, and while said captain was engaged in the discharge of said cargo as aforesaid, had his said horses and carts engaged in transporting said coal to said gas works, and intended and was prepared and desirous to transport the remainder of said cargo as aforesaid from said wharf to said gas works as soon and as fast as the same was discharged upon said wharf from said brig ; that the use of said wharf of the plaintiff by said brig in being moored thereto, and in the discharge of said cargo thereon, and his said contract with said company, and his employment by them as aforesaid, had been and then and there were a source of profit and gain to him, to wit, the sum of twenty-five dollars per day, and but for the acts and misconduct of the defendant, as herein set forth, would have continued so to be a source of profit and gain to him for the space of ten days thereafter. And the plaintiff says that the defendant, well knowing the premises, but contriving and intending to defraud and injure the plaintiff, and defraud him of his just profit and gain from the said use of his said wharf, and from his said contract and employment as aforesaid, at said Bridgeport, and within the limits of said city, on said 25th day of September, at about said hour of nine o'clock in the forenoon of said day, with intent to cause said captain to remove said brig from said wharf, and to prevent him from further using said wharf, and from discharging the remainder of said cargo upon the same, and from paying the plaintiff anything for the further use of said wharf as aforesaid, and with intent to hinder and prevent the plaintiff from fulfilling his said contract, and from continuing his said employment, and from receiving any gain or profit therefrom or from the said use of his said wharf, falsely and fraudulently pretended and represented himself to said captain to be an harbor-master for said harbor, and a superintendent of docks and wharfs within said city, and as

such pretended harbor-master and superintendent, then and there on the day and at the hour aforesaid, made and signed a certain instrument in writing purporting to be an official order from the defendant as such harbor-master and superintendent, in words and figures as follows: "Bridgeport, September 25th, 1866. To the captain or the officer in command of the brig Brilliant, of St. Johns, N. S., now lying at the wharf in the harbor and city of Bridgeport. You are hereby ordered and commanded to haul said vessel astern and far enough to permit the canal boat to obtain a berth at the elevator on the wharf of Miller & Co., on or before eleven o'clock this day, under penalty of thirty dollars for neglecting to obey. JOHN BROOKS, Harbor-Master and Superintendent." And then and there, on said day, at about said hour, the defendant delivered the same to said captain on board said brig then moored at said wharf as aforesaid, and then and there and with intent as aforesaid, falsely and fraudulently pretended and represented to said captain that he then was harbor-master and superintendent as aforesaid duly appointed and had full power and authority to make said order and enforce the same, whereas in truth and in fact the defendant at said time was not such harbor-master and superintendent, and had no power or authority to make said order or enforce the same; and the defendant, after the making and delivering of said order, and after the making of the representation as aforesaid by the defendant, at about said hour of eleven o'clock, falsely and fraudulently, with intent to intimidate said captain, threatened said captain that he would fine him thirty dollars unless he hauled said brig away from her berth at said wharf within two minutes, and falsely and fraudulently with intent as aforesaid pretended and represented to said captain that he had the right and power as such officer to impose said fine upon him and collect the same from him, whereas he neither was such officer nor had he any such right or power; and from said false and fraudulent pretense and representation of the defendant said captain did believe the defendant was such officer and had such power and authority as aforesaid; that said captain thereupon, at said hour

of eleven o'clock, in consequence of said order delivered to him as aforesaid, and of said pretenses and representations of the defendant and of his belief therein, caused as aforesaid, and of the threats and intimidations of the defendant as aforesaid, was induced and compelled to haul, and did haul, his said brig away from said wharf, contrary to his own mind and will, and contrary to the mind and will of the plaintiff, and said canal boat mentioned in said order then and there by direction of the defendant, claiming to be an officer as aforesaid, entered upon and occupied so much of said wharf of the plaintiff that said brig could not return thereto. Whereby, and by means of the acts and misconduct of the defendant as aforesaid, said captain was prevented from using said wharf by lying with said brig thereat and discharging said cargo thereon, and the plaintiff was wrongfully and un-justly deprived of his just reward and gain, amounting to one hundred dollars and more, which he might and otherwise would have received for the said use of his said wharf and from his said contract with said company and from his said employment.

There were several other counts in the declaration not varying materially from the first.

The case was tried to the jury in the city court, on the general issue, with notice of a claim of lawful authority for doing the acts complained of.

On the trial the parties respectively offered evidence pertinent to the issue; but the plaintiff did not claim to recover for any loss or damage on account of his contract with the gas company. The defendant also offered evidence to prove that the brig extended from fifteen to twenty-seven feet in front and along the side of the wharf of Miller & Co., which was about one hundred and forty-five feet in length; that on the 25th of September a barge about ninety feet in length came into the harbor, loaded with grain for Miller & Co., which they were desirous of having unladen at their wharf, and that after the refusal of the captain of the brig to move the brig, Miller & Co. requested the defendant to order the captain of the brig to drop astern, far enough to ena-

ble the barge to discharge her cargo at their wharf. The defendant also claimed, and offered evidence to prove, that in the matters in dispute between the parties he acted in good faith, without any malice or fraudulent intent towards the plaintiff, but in the belief that he was doing his duty as a public officer of the city. It was admitted by the plaintiff that the defendant was the only person appointed superintendent of wharves in the city, and by the defendant that a compliance with the order would have removed the brig so far astern that the remainder of her cargo could not have been discharged upon the plaintiff's wharf.

Upon the whole case the defendant claimed, and requested the court to charge the jury:

1st. That if the written order set forth in the declaration was given by the defendant to the master of the brig, and if the master removed the brig from the plaintiff's wharf in consequence of the order, yet if the defendant had not, at that time, authority to issue any such order, the master was not bound to obey the same, and the plaintiff cannot recover in this action.

2d. That the allegations in the first and second counts, that the defendant did the acts complained of fraudulently and with intent to defraud the plaintiff in the manner alleged, are essential allegations, and the jury must find them proved in order to render a verdict for the plaintiff.

3d. That the allegation that the defendant did the act complained of in the third count maliciously, and with intent to defraud the plaintiff in the manner alleged in that count, is an essential allegation, and must be proved to entitle the plaintiff to a verdict.

4th. That if the jury find from the evidence that the acts complained of in the declaration as having been done by the defendant, were done by him without any intent to injure the plaintiff, or to deprive him of any profits or pecuniary benefit, the plaintiff cannot recover.

5th. That if the jury find that the defendant believed that he was acting in the line of his power and duty as a public officer, in doing the acts complained of, and did such acts in

good faith, without any fraudulent intent or malice towards the plaintiff, then the defendant is entitled to a verdict, although his appointment as such officer is invalid, and he was not, in law and in fact, such officer.

The court declined to charge the jury in accordance with the first claim of the defendant, but charged them in conformity with the second and third claims; also, that the question of malice was a question of fact for the jury to find, and might be inferred from the want of just or probable cause, but that such inference might be rebutted; that the term "malice" in its legal significance as applicable to torts might be defined to be the doing of any act injurious to another without just cause, and did not necessarily mean that which must proceed from a spiteful, malignant or revengeful disposition; that upon the question of malice as alleged by the plaintiff, the jury should take into consideration, in connection with the order, the acts and representations of the defendant accompanying the same, and that it was not enough for the defendant simply to have believed that he had authority to make the order complained of, and that he made the same in good faith, but that he was bound to act with reasonable caution. The court declined to charge the jury as requested in the fourth and fifth claims of the defendant. As to the authority of the defendant to do the acts complained of, the court instructed the jury that the defendant was a lawful superintendent of wharves within the city, but had no power as such to make an order that the brig should be removed from the plaintiff's wharf to make room for the barge at the wharf of Miller & Co.

The jury returned a verdict for the plaintiff, and the defendant filed a bill of exceptions.

The defendant also filed a motion in arrest of judgment for the insufficiency of the declaration, which motion was overruled by the court.

He then brought the record before the Superior Court for revision, by a motion in error, and the case was reserved by that court for the advice of this court. The errors assigned were, the overruling of the motion in arrest of judgment, and

the instructions of the court to the jury, and the omissions to instruct them as requested, as above stated.

*Beardsley* and *Sumner*, for the plaintiff in error.

1. The motion in arrest should have been allowed. The allegations of the declaration do not constitute a ground of action, because the injury alleged is too remote and contingent. 1 Hilliard on Torts, 92 ; *Ashley* v. *Harrison*, 1 Esp., 48 ; *Vicars* v. *Wilcocks*, 8 East, 1 ; *Anthony* v. *Slaid*, 11 Met., 290 ; 1 Chitty Pl., 388 ; *Smith* v. *Blake*, 1 Day, 258 ; *Morris* v. *Langdale*, 2 Bos. & Pul., 284 ; *Connecticut Mut. Life Ins. Co.* v. *New York & New Haven R. R. Co.*, 25 Conn., 265 ; *Lamb* v. *Stone*, 11 Pick., 527 ; *Moody* v. *Burton*, 27 Maine, 427 ; *Starr* v. *Bennett*, 5 Hill, 303.

2. The defendant was superintendent of wharves for the city of Bridgeport, and as such had full right to make the order complained of. City Charter, 1855, page 6, sec. 9, page 7, sec. 10 ; By-law of Dec. 7, 1863.

3. The court should have charged in conformity with the fourth and fifth claims of the defendant, and erred in giving the definition of malice contained in the charge as applicable to the case, and in charging that it was not enough for the defendant simply to have believed that he had authority to make the order complained of, and that he made the same in good faith. An actual fraudulent intent of the defendant towards the plaintiff, or malice towards him, prompting him to the commission of the acts complained of must be shown. *Drewe* v. *Coulton*, 1 East, 563, note ; *Jenkins* v. *Waldron*, 11 Johns., 114 ; 1 Hilliard on Torts, 108, 247 ; 2 id., 193, 286 ; *Rail* v. *Potts*, 8 Humph., 225 ; *Rochester White Lead Co.* v. *City of Rochester*, 3 Comst., 463 ; *Seaman* v. *Patten*, 2 Caines, 312 ; *Downer* v. *Lent*, 6 Cal., 94 ; *Gould* v. *Hammond*, 1 McAll., 235 ; *Youngs* v. *Covell*, 8 Johns., 19 ; *Stewart* v. *Southard*, 17 Ohio, 402 ; *Danvers* v. *Morgan*, 33 Eng. L. & Eq., 490 ; 2 Smith Lead. Cas., 55 ; *Ravenga* v. *Mackintosh*, 2 Barn. & Cress., 693 ; *Haycraft* v. *Creasy*, 2 East, 92 ; *Vernon* v. *Keys*, 12 id., 638 ; *Eyre* v. *Dunsford*, 1 id., 317 ; *Shrewsbury* v. *Blount*, 2 Man. & Grang., 475.

*Treat* and *Blake*, for the defendant in error.

1.   As to the insufficiency of the declaration : The declaration alleges false and malicious representations of the defendant, with intent to injure and defraud the plaintiff, whereby the plaintiff suffers damage which is specially set out in the declaration.    Such an action is clearly maintainable.    1 Swift Dig., 562; *Carrington* v. *Taylor*, 11 East, 571, 574 ; *Hodsoll* v. *Stallbrass*, 9 Car. & P., 63 ; *Bennett* v. *Allcott*, 2 T. R., 166 ; *Ives* v. *Carter*, 24 Conn., 404 ; *Culver* v. *Webb*, 12 id., 441 ; *Hine* v. *Robbins*, 8 id , 342 ; *Salmon* v. *Richardson*, 30 id., 360 ; *Benton* v. *Pratt*, 2 Wend., 386.  In respect to the averment of malicious intent, this case differs materially from that of *Connecticut Mut. Life Ins. Co.* v. *New York & New Haven R. R. Co.*, 24 Conn., 265.   The court in that case raise this very distinction as an essential point in the case.   See page 270.

2.   It is claimed that the court should have charged the jury that, even admitting the defendant's representations to have been malicious, the plaintiff could not recover, because the master of the brig ought not to have believed him.    This might be true, perhaps, if the latter was guilty of gross neglect in believing and acting upon the representations, but it is not claimed that the request to the court embraced any such condition.   See *New Haven Steamboat & Transportation Co.* v. *Vanderbilt*, 16 Conn., 420.   And in the broad form in which the request was made, it constitutes an extraordi nary defence.    *Watson* v. *Atwood*, 25 Conn., 313, 320 ; *Humphrey* v. *Case*, 8 id., 101; *Monell* v. *Colden*, 13 Johns., 395 ; *Culver* v. *Avery*, 7 Wend., 380.

3.   It is claimed that the court erred in charging the jury that simple good faith on the part of the defendant, and his belief in his own representations, would not excuse him. But the court added, in the same connection, that the defendant was bound to act with reasonable caution, and that from his neglect to do so, coupled with his other acts, declarations and representations, the jury had a right to infer malice. This charge was correct.    *Moore* v. *Stevenson*, 27 Conn., 14 ; *Bristol Manufacturing Co.* v. *Gridley*, id., 221.

4.   It is claimed that the court should have charged that

even false, reckless and injurious representations made by the defendant, if made without intent to defraud the plaintiff, or under a belief of their truth, furnish no ground of action. The court in fact charged, as requested by the defendant, that the allegations of fraud and malice were essential, and must be proved. This charge is fully as favorable to the defendant as he could require. 1 Swift's Dig., 547; *Parmalee* v. *Baldwin,* 1. Conn., 313; *Anthony* v. *Slaid,* 11 Met., 290.

5. The court did not err in charging that the defendant as superintendent of wharves had no right to order vessels away from any needed part of the plaintiff's wharf, upon the application of Miller & Co. The by-law authorized him, upon Miller & Co.s' application, only to order the vessel away from their wharf, not from the plaintiff's. See by-law of 1863.

BUTLER, J. The first error assigned upon the record, is that the city court erred in not arresting the judgment for the insufficiency of the declaration. We do not think the error manifest.

It is undoubtedly true that where one is injured by the wrongful act of another, and others are indirectly and consequentially injured, but not by reason of any natural or legal relation, the injuries of the latter are deemed too remote to constitute a cause of action. The doctrine was fully discussed and settled in the case of *The Connecticut Mutual Life Insurance Co.* v. *The New York and New Haven Railroad Co.,* 25 Conn., 265. We have no desire or intention to weaken the force of that decision. The consequences which would result, if the rule were different, are too momentous to permit the doctrine to be questioned.

But it was admitted by the distinguished counsel who argued that case, and by the eminent judge who gave the opinion of the court, that the rule might be different where an injury is done to one with a *malicious or fraudulent design* to injure another *through a contract relation.* And the cases are numerous where injuries have been holden actionable although not directly committed upon the plaintiff in the case, if they were intended to affect and did injuriously affect him in his contract or business relations. Several of the

early English cases are cited in Swift's Digest, page 562, and there are modern cases in this country of a similar character.

Referring to the declaration, we find that in some or all the counts the defendant is charged with having falsely claimed and represented himself to be a superintendent of wharves and harbor-master, and as such to have issued an order, directing the captain of a vessel which was moored at the wharf of the plaintiff to remove therefrom. We find it further averred that the captain was in the act of discharging and the plaintiff of receiving a cargo of coal from the vessel; that the plaintiff owned and kept such wharf for the purpose of letting the same and receiving wharfage therefor, as a source of profit and gain to him; that by means of such representations and order the captain of the vessel was caused and induced to remove from said wharf to the wharf of another person and there discharge his cargo; and that by reason of such removal the plaintiff lost the wharfage which he otherwise would have received and was damnified thereby. It is further alleged that the representations and acts of the defendant were made and done with a fraudulent and malicious purpose and design to injure the plaintiff and prevent him from making the gain and profit which he would have made from the occupation of his wharf by the vessel.

Now this case differs essentially, as presented by the declaration, from the case cited from the 25th Conn. R. and another cited from the 11th Met. R., in which the opinion was given by Judge Shaw. There is here averred not only the *essential element* of a *fraudulent and malicious design to injure the plaintiff*, as the governing motive of the defendant's conduct, but that the fraudulent representations and acts were made and done to one sustaining a *business relation* with the plaintiff, with a view of disturbing and breaking up that business relation, and an averment that the relation was disturbed and that the plaintiff lost a gain and profit by reason of that disturbance. And although the representations and order are alleged to have been made to the captain of the vessel as occupant of the wharf, they are not alleged to have been made with any design to injure him, or any other design than to

injure the plaintiff. It is not easy to see how this case can be distinguished in principle from the case where a tenant at will was frightened out of his occupation with intent to injure the landlord, or the customer fraudulently prevented from taking his horse to a market to prevent the owner from obtaining his toll, or children prevented by fright from attending a school to the injury of the school-master, or from many other cases where men have been fraudulently and maliciously injured indirectly through their business relations.

For these reasons we think the motion in arrest was properly overruled.

But we are satisfied that the case was not properly presented to the jury. It appears from the bill of exceptions that the defendant was in fact superintendent of wharves; that. as such he had authority upon the application of any owner of a wharf to remove a vessel therefrom; that the vessel in question which lay at the wharf of the plaintiff extended some distance in front of the wharf of Miller & Co. who were adjoining owners; that Miller & Co. had a vessel in the stream which was prevented from coming to the wharf by the obstruction; that they applied to the defendant as superintendent of wharves to order the vessel which was lying at the plaintiff's wharf to be removed; and that thereupon the defendant issued the order set out in the declaration. The parties were at issue in relation to the extent of the defendant's powers, and the construction of the order, and as to whether the order was or was not a legal one. That question was submitted to the jury as a mixed question of law and fact, but in relation to that submission no complaint is made. The defendant also claimed and offered evidence to prove, that in the matters in dispute between the parties he acted in good faith, without any malice or fraudulent intent toward the plaintiff, but in the belief that he was doing his duty as a public officer of the city. This claim presented the pivotal fact in the case, for if there was no fraudulent or malicious design in what he did or said to injure the plaintiff and prevent him from acquiring the gain and profit which he expected to acquire, and would have acquired, then there was no actiona-

ble injury to the plaintiff, and the defendant was entitled to a verdict. On this point the defendant made four claims to the court, and requested a corresponding charge to the jury. The import of the first two of those requests was, that the allegations that the acts complained of were done fraudulently and maliciously with intent to defraud the plaintiff, must be proved as laid to entitle the plaintiff to a verdict; and the import of the third and fourth requests was, that if the jury found that the acts were done without any intent to injure the plaintiff or deprive him of any profits or pecuniary benefits, or if the defendant believed that he was acting in the line of his duty as an officer, and did the acts in good faith, without any fraudulent intent or malice toward the plaintiff, he was not liable, although not in law or fact such an officer. The court charged in conformity with the first two requests but not in conformity with the last two, and further charged them that it was not enough for the defendant simply to have believed that he had authority to make the order complained of and that he made the same in good faith; he was bound to act with reasonable caution. Here there was manifest error. The turning question in the case was whether the defendant was acting with the fraudulent and malicious design to injure the plaintiff and deprive him of his wharfage, or whether he was acting as a public officer in good faith, in the belief that he was doing his duty, *without such malicious and fraudulent design.* The whole case then turned upon the question of the existence of such a design. If that existed, the action lay, and the plaintiff was entitled to recover. If that did not exist the injury to the plaintiff was remote and he could not recover. The defendant asked the court in the second and third requests to charge and they did charge the jury that the allegations in the declaration averring such a design were essential allegations and must be proved. The defendant asked the court in the fourth and fifth requests to charge the jury that if they found the acts were done without any such design, but in good faith, believing that he was a public officer and had a right to do them, then the plaintiff could not recover, and the court did not so charge. But the fourth and

fifth requests contain a repetition, in a different form, of the same proposition which was contained in the other two and which the court recognized, and the defendant was entitled, in such a peculiar case, to have the proposition repeated to the jury in the manner requested. And when the court not only declined to charge as requested, but added what imported, substantially, that the plaintiff might recover notwithstanding the defendant acted in good faith as a public officer, believing that he had authority so to act, and without any such design, "if he did not act with reasonable caution," they misled the jury and did injustice to the defendant. They ignored the only rule on which the case could be sustained and applied a rule in favor of the plaintiff which might have been proper in a suit brought by the captain of the brig, but which had no just application to the case.

For these reasons the Superior Court is advised to reverse the judgment.

In this opinion the other judges concurred.