[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE BY DEFENDANT KAESTLE BOOS (DOCUMENT #104)
The plaintiff, Darien Asphalt Paving, Inc., filed a nine-count complaint against the Town of Newtown (the town); O G Industries, Inc. (OGII), a construction company; and Kaestle Boos Associates, Inc. (KBAI), an architectural firm. The plaintiff alleges that the town and KBAI entered into a design contract to expand and improve the town's high school. The town also entered into a contract with OGII to perform the necessary construction. In a separate contract, the town hired the plaintiff to perform site work on the project. The plaintiff alleges in count one that the town breached the contract. The plaintiff alleges in count two that OGII was negligent in its role as construction manager in ensuring that the plaintiff was paid for its services. The plaintiff alleges in count three that OGII's actions were willful and malicious. The plaintiff alleges in count four that OGII's actions constitute a violation of the Connecticut Unfair Trade Practices Act (CUTPA) The plaintiff alleges in count five that OGII intentionally interfered with the plaintiff's contractual relationship with the town. The plaintiff alleges in count six that KBAI was negligent in the performance of its duty to act upon the plaintiff s applications for payment and to act in conjunction with OGII to either issue a certificate of payment or notify the plaintiff of reasons why the certificate was being withheld. The plaintiff alleges in count seven that these actions by KBAI were willful and malicious. The plaintiff alleges in count eight that these actions constitute a violation of CUTPA. The plaintiff alleges in count nine that by virtue of these actions, KBAI intentionally interfered with the plaintiff's contractual relationship with the town.
KBAI moves to strike counts six through nine of the plaintiff's complaint on the grounds that (1) each is barred by the economic loss doctrine; (2) the allegations in count eight are insufficient to support a CUTPA claim against a professional; and (3) the allegations in count nine do not state a claim for tortious interference with a contract because there are no allegations of improper motives or means. The plaintiff argues in response that the economic loss doctrine does not bar the claims made here, and that the allegations in counts eight and nine sufficiently state causes of action for CUTPA and intentional interference with contractual relations, CT Page 14035 respectively.
 II. DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted . . . [The court] must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998).
 A. Economic Loss Doctrine
The first point of inquiry for the court is whether the Connecticut courts recognize the economic loss doctrine. The economic loss doctrine is "a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic." FreyDairy v. A.O. Smith Harvestore Products, 886 F.2d 128, 129 (6th Cir. 1989). KBAI asserts that although our appellate courts have yet to expressly adopt the economic loss doctrine, several cases indicate that they would do so. The cases relied upon by KBAI, however, are easily distinguishable. First, UOP v. AndersenConsulting, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 145753 (April 24, 1997, Lewis, J.), discusses the economic loss doctrine in the context of Illinois
law, and thus cannot be of significance in determining whether Connecticut courts have adopted the doctrine. Second, in Doyle v.AP Realty Corp., 36 Conn. Sup. 126, 414 A.2d 204 (1980), condominium owners brought suit against the architect and developers of the project, alleging structural deficiencies. The court noted that if the architect had raised the issue of lack of privity on the part of the plaintiffs as a ground for striking certain counts due to lack of standing, then the outcome may have been different. Id., 128. This observation is nothing more than dicta, as the court went on to state that it need not decide this issue since it had not been raised by the parties and was not necessary to a determination of the subject motion to strike.Id., 128-29. This portion of Doyle has not been commented on by any subsequent court. The third Connecticut case cited by KBAI in its motion to strike is Verdon v. Transamerica Ins. Co.,
CT Page 14036187 Conn. 363, 446 A.2d 3 (1982). As KBAI points out, however, this was a products liability case, governed by statutes precluding recovery for economic loss in a products liability suit. See General Statutes § 52-572n(c) ("As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code"). Therefore, none of the three cases cited by KBAI in its motion to strike provides persuasive authority for the proposition that the economic loss doctrine has been recognized by Connecticut courts.
In a subsequent filing in support of its motion to strike, KBAI cites DeVillegas v. Quality Roofing, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 294190,10 CONN. L. RPTR. 487 (November 30, 1993, Freedman, J.), as authority for the proposition that the Connecticut Supreme Court has long recognized the economic loss doctrine. The court in DeVillegas
cites Connecticut Mutual Life Ins. Co. v. N.Y N.H.R.R. Co.,25 Conn. 265 (1856).
The facts of Connecticut Mutual include the following. A Dr. Beach had a life insurance policy with the plaintiff. Id., 266. Dr. Beach was a passenger in the defendant's train when the car he was riding in derailed and plunged into a stream, killing him.Id. Dr. Beach's widow was paid by the plaintiff pursuant to the life insurance policy. Id., 266-67. The plaintiff then brought suit against the defendant on the theory that it had to pay under the policy due to the defendant's negligence. A large portion of the court's opinion is devoted to determining whether there is a common law cause of action for wrongful death. Id., 271-74. The court then examined "whether a plaintiff can successfully claim a legal injury to himself from another, because the latter has injured a third person in such a manner that the plaintiffs' contract liabilities are thereby affected." Id., 274. The court went on to discuss whether a third party would be able to recover when two parties enter into a contract which results in the third party being monetarily injured. Id., 275-76. The court held: "[I]n the absence of any privity of contract between the plaintiffs and the defendants, and of any direct obligation of the latter to the former growing out of the contract or relation between the insured and the defendants, the loss of the plaintiffs, although due to the acts of the railroad company, being brought home to the insurers only through their artificial CT Page 14037 relation of contractors with the party who was the immediate subject of the wrong done by the railroad company, was a remote and indirect consequence of the misconduct of the defendants, and not actionable." Id., 276-77. Thus, the thrust of the holding inConnecticut Mutual was to set forth standards by which to assess whether a plaintiff's injury was foreseeable, and therefore, whether that party could recover. The concept of privity was utilized to measure the remoteness of the competing parties' interests to determine whether the injured party's loss was foreseeable.
Connecticut Mutual has been cited almost exclusively for its holding on a common law wrongful death cause of action. The privity concept is cited by only two subsequent Supreme Court decisions. In Fidelity Casualty Ins. v. Sears, Roebuck Co.,124 Conn. 227, 199 A. 93 (1938),[1] the plaintiff was the worker's compensation insurer for Hathaway. Id., 229. Hathaway was employed by the defendant, and in the course of this employment, one of Hathaway's agents was injured by the negligent or intentional act of one of the defendant's agents. Id., 230. Hathaway and the plaintiff paid a worker's compensation claim as a result of the defendant's tortious act. Id. The court determined that based upon the lack of privity of contract between the plaintiff and the defendant, the trial court had properly sustained the defendant's demurrers. Id., 236. In so finding, the court relied expressly upon the holding ofConnecticut Mutual, as well as McNary v. Chamberlain,34 Conn. 384, 388-89 (1867) (privity shown by defendant's actual intent to injure the plaintiff in his contractual relation by the wrongful act committed), and Gregory v. Brooks, 35 Conn. 437, 449 (1868) (wrongful act to a third party sustaining a business relation with the plaintiff done by fraud or malice is actionable and not within the rule). Id., 233-35.
The requirement of privity of contract in Connecticut Mutual
and Fidelity does not amount to the adoption by our Supreme Court of the economic loss doctrine. For example, the holding inFidelity was limited by the court, which noted that the case before it did not involve tortious interference claims, but rather harm springing from a contractual agreement. Fidelity Casualty Ins. Co. v. Sears, Roebuck Co., supra,124 Conn. 235-36. As was the case in Connecticut Mutual, the Fidelity claim arose in the context of insurance law, and both cases therefore are distinguishable from the case at bar. The allegations in counts six through nine of the complaint here are not based in CT Page 14038 contract, but rather tort. As stated by our Supreme Court inCoburn v. Lenox Homes, Inc., 173 Conn. 567, 574, 378 A.2d 599
(1977), "the requirement of privity should only be applicable to actions growing out of contract theory and should be irrelevant to tort actions." The Coburn court went on to hold that the touchstone for recovery by a plaintiff is not a privity relationship with the tortfeasor, but rather whether the injury was foreseeable. Id., 575. The second case relying on theConnecticut Mutual privity concept is Blake v. Levy,191 Conn. 257, 464 A.2d 52 (1983).Blake involved a claim of tortious interference with a business relationship. Id., 259. In Blake, the court determined: "The plaintiff argues correctly that the trial court erred in its conclusion that the plaintiff's complaint was insufficient because of the absence of an allegation of privity between the parties. Although this court has required privity of contract in order to sustain a claim for negligent interference with contract obligations; Fidelity Casualty Ins. Co. v. Sears, Roebuck Co., 124 Conn. 227, 233-34, 199 A. 93 (1938); Connecticut MutualLife Ins. Co. v. N.Y. N.H.R. Co., 25 Conn. 265, 276 (1856); there is no such requirement in cases involving intentional interference with business relations. Gregory v. Brooks,35 Conn. 437, 446 (1868); McNary v. Chamberlain, 34 Conn. 384, 388
(1867)." Id., 259. No indication is given in Blake that the economic loss doctrine has been adopted by our Supreme Court. Rather, the holding of Blake merely sets forth the elements for negligent and intentional interference with business relationship causes of action.
Thus, Connecticut Mutual and its progeny indicate that the economic loss doctrine has not been adopted by our appellate courts. Only one Superior Court decision, DeVillegas, has determined that the doctrine is recognized by Connecticut. On the other hand, an earlier Superior Court decision with facts more similar to those here reached the opposite conclusion. In City ofDanbury v. Flaherty Giavara Associates, Inc., Superior Court, judicial district of New Haven, Docket No. 245246 (November 3, 1988, Schaller, J.) (4 C.S.C.R. 2), then-Judge Schaller found that there were no Connecticut cases where the Supreme Court attempted to draw a distinction between economic and personal or property damages. The court went on to state that a "majority of jurisdictions have held that the absence of privity of contract is not a bar to negligence actions by construction professionals against one another for economic losses where reliance by the CT Page 14039 plaintiff was reasonably foreseeable." City of Danbury v.Flaherty Giavara Associates. Inc., supra, 4 C.S.C.R. 3.
Based upon the foregoing analysis, this court declines to find that the Connecticut courts recognize the economic loss doctrine as a bar to tort actions where the relationship between the parties is contractual and the only losses alleged are economic. The appellate courts have not seen fit to recognize the doctrine. Therefore, KBAI's motion to strike counts six through nine on the grounds that the claims made therein are barred by the economic loss doctrine is denied.
 B. Count Eight — CUTPA
KBAI argues that count eight should be struck for the additional reason that the plaintiff's allegations regarding KBAI's alleged violation of CUTPA are insufficient because they do not satisfy the "cigarette rule." The plaintiff contends that the pleadings are legally sufficient.
"It is well established that in determining whether [an act or] practice violates CUTPA [Connecticut courts] have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when [an act or] practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen] . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Citations omitted; internal quotation marks omitted.) Jacobs v. Healy Ford-Subaru, Inc., 231 Conn. 707, 725,652 A.2d 496 (1995).
Viewing the allegations in the plaintiff's complaint in their most favorable light, a legally sufficient cause of action under CUTPA has been alleged. The alleged harm caused to the plaintiff due to the alleged negligence of KBAI is substantial, including: severe impairment of the plaintiff's cashflow which hampered the plaintiff's ability to perform its work; damage to the plaintiff's CT Page 14040 reputation and credit standing; undermining the plaintiff's bonding capacity; and preventing the plaintiff from undertaking other work. (Complaint, Count 6, ¶ 15.) It is further alleged that these harms are likely to cause the complete failure and collapse of the company. Id. Therefore, the plaintiff's CUTPA allegations satisfy the cigarette rule, and the motion to strike on this ground is denied.
Finally,[2] KBAI moves to have count eight struck on the ground that CUTPA claims brought against professional parties are limited to the entrepreneurial or commercial aspects of the profession, rather than claims of professional malpractice. The plaintiff argues that its CUTPA claim goes to the commercial aspects of KBAI's relationship with it.
The Supreme Court has held that "professional negligence — that is, malpractice — does not fall under CUTPA. Although physicians and other health care providers are subject to CUTPA, only the entrepreneurial or commercial aspects of the profession are covered, just as only the entrepreneurial aspects of the practice of law are covered by CUTPA." (Emphasis added.)Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34, 699 A.2d 964
(1997). This concept was restated in Beverly Hills Concepts.Inc., v. Schatz Schatz, 247 Conn. 48, 79 (1998), a case involving allegations of legal malpractice, where the court held: "Accordingly, as in the health care contest, `we conclude that professional negligence — that is, malpractice — does not fall under CUTPA."'
The Supreme Court has not yet limited the application of CUTPA to other professionals, such as architects. The cases only speak to limits on CUTPA claims brought against healthcare providers and lawyers. The Supreme Court has articulated public policy reasons why CUTPA claims brought against these groups of professionals are limited solely to the entrepreneurial or commercial aspects of the profession. Haynes v. Yale-New HavenHospital, supra, 243 Conn. 34-5.
KBAI advances no law or argument as to why architects should be treated in the same manner as healthcare providers and attorneys. This court declines to make a groundless expansion of the Supreme Court's rule in Haynes to other professional groups. KBAI's motion to strike count eight is therefore denied, as the plaintiff may base a CUTPA claim on KBAI's alleged professional negligence, that is, its alleged malpractice. CT Page 14041
 C. Count Nine — Tortious Interference
KBAI argues that the plaintiff has failed to allege sufficient facts to support a claim for tortious interference with contractual relations.[3] "[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously . . . In Blake [v. Levy, supra,], we also determined that [i]n an action for intentional interference with business relations . . . the better reasoned approach requires the plaintiff to plead and prove at least some improper motive or improper means." (Citations omitted.) Wellington Systems, Inc. v.Redding Group, Inc., 49 Conn. App. 152, 166-67, (1998). "[T]o raise an allegation of wilful conduct, the plaintiff must clearly plead that the [harm] was caused by the wilful or malicious conduct of the defendants." (Internal quotation marks omitted.) Holler v. Buckley Broadcasting Corp.,47 Conn. App. 764, 769, 706 A.2d 1379 (1998).
The plaintiff here has not alleged that KBAI's actions were the result of any improper motive or means. As such, the allegations are legally insufficient and KBAI's motion to strike count nine is granted.
 III. CONCLUSION
KBAI's motion to strike counts six, seven, eight and nine on the ground that they are barred by the economic loss doctrine is denied. KBAI's motion to strike count eight on the ground that it is legally insufficient and that a CUTPA claim based on professional negligence cannot be brought against KBAI, is denied. KBAI's motion to strike count nine on the ground that it is legally insufficient is granted.
NADEAU, J.