## S. Prestley Blake *v.* David Levy
## (11597)

Peters, Healey, Parskey, Shea and Grillo, Js.

Argued May 13—decision released August 30, 1983

*C. Michael Budlong,* with whom was *Terence S. Ward,* for the appellant (plaintiff).

*Joseph F. Skelley, Jr.,* with whom, on the brief, was *Jeffrey L. Williams,* for the appellee (defendant).

Peters, J. The issue on this appeal is whether a cause of action for tortious interference with business relations may be premised on a claim of maliciously initiated prior legal proceedings, when those proceedings culminated in a negotiated settlement. The plaintiff, S. Prestley Blake, brought an action against the defendant, David Levy, seeking damages for tortious interference both on his own behalf and as assignee for Curtis Blake. The defendant moved to strike the com-

plaint insofar as it stated a claim for vexatious litigation, on the ground that the prior litigation had not terminated in the plaintiff's favor. Although the plaintiff objected to the motion to strike because his complaint alleged tortious interference with business relations rather than vexatious litigation, the trial court nonetheless granted the defendant's motion to strike. The plaintiff has appealed.

The facts that govern this appeal are not in dispute.[1] The plaintiff was the chairman of the board and a major stockholder of Friendly Ice Cream Corporation (Friendly). On December 24, 1978, Friendly merged with Hershey Corporation (Hershey) pursuant to a stock purchase agreement negotiated by the plaintiff. On the day the merger was to be consummated, the defendant approached the plaintiff and demanded a broker's commission for his efforts in effecting the merger. The plaintiff refused to pay the commission, asserting that the defendant's demand was fraudulent, that the defendant was a complete stranger to the transaction and that it was he, and not the defendant, who was responsible for bringing the corporations together and concluding the stock purchase contract. The defendant thereupon filed suit in the United States District Court to recover a broker's fee, not from the plaintiff but from Friendly. *Levy* v. *Friendly Ice Cream Corporation,* U.S. District Court, D. Conn., Civil No. H-80-88 (1980). In 1981, the litigation between the defendant and Friendly terminated by a negotiated settlement, pursuant to which Friendly paid the defendant

---

[1] A motion to strike challenges the legal sufficiency of a pleading. Practice Book § 152. Therefore, for purposes of this appeal, we assume the truth of the allegations of the complaint. *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 530 n.2, 461 A.2d 1369 (1983); *Drazen* v. *Drazen,* 180 Conn. 572, 573 n.3, 430 A.2d 1288 (1980).

$60,000. The plaintiff in this action was never made a party to the litigation between the defendant and Friendly.

The trial court, on this record, concluded that the plaintiff's allegations failed to support a cause of action for tortious interference by the defendant with a business relationship between the plaintiff, Hershey and Friendly. In part, the trial court relied upon the absence of an allegation of privity between the alleged wrongdoer and the injured plaintiff. Further, the trial court found that the plaintiff's pleadings fell short of alleging conduct that would fall within the definition of wrongful interference with a business relationship as that tort is defined in 4 Restatement (Second), Torts §§ 766, 766A and 766B (1979).

On appeal the plaintiff raises two related claims. He argues that the trial court erred: (1) in holding that a claim for tortious interference with business relations requires privity between the plaintiff and defendant and (2) in concluding that the allegations of the complaint were insufficient to withstand a motion to strike.

I

The plaintiff argues correctly that the trial court erred in its conclusion that the plaintiff's complaint was insufficient because of the absence of an allegation of privity between the parties. Although this court has required privity of contract in order to sustain a claim for negligent interference with contract obligations; *Fidelity & Casualty Ins. Co.* v. *Sears, Roebuck & Co.,* 124 Conn. 227, 233–34, 199 A. 93 (1938); *Connecticut Mutual Life Ins. Co.* v. *N.Y. & N.H. R. Co.,* 25 Conn. 265, 276 (1856); there is no such requirement in cases involving intentional interference with business relations. *Gregory* v. *Brooks,* 35 Conn. 437, 446 (1868); *McNary* v. *Chamberlain,* 34 Conn. 384, 388 (1867). The

trial court's determination to grant the motion to strike was not, however, based exclusively on a privity theory. We therefore must examine whether, for other reasons, the trial court was correct in concluding that the plaintiff had failed to state a claim for tortious interference. See *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, 190 Conn. 528, 532, 461 A.2d 1369 (1983); *W. J. Megin, Inc.* v. *State*, 181 Conn. 47, 54, 434 A.2d 306 (1980); *State* v. *Assuntino*, 180 Conn. 345, 353, 429 A.2d 900 (1980).

## II

The plaintiff claims that the defendant's act of filing suit against Friendly and pursuing the litigation to a $60,000 settlement, when the defendant allegedly knew that the lawsuit was groundless and fraudulent, constitutes tortious interference with the plaintiff's relationship with Friendly and Hershey under the stock purchase agreement. We disagree.

This court has long recognized a cause of action for tortious interference with contract rights or other business relations. See *Jones* v. *O'Connell*, 189 Conn. 648, 660, 458 A.2d 355 (1983); *Herman* v. *Endriss*, 187 Conn. 374, 376–77, 446 A.2d 9 (1982); *Kecko Piping Co.* v. *Monroe*, 172 Conn. 197, 201–202, 374 A.2d 179 (1977); *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.*, 169 Conn. 407, 414–15, 363 A.2d 86 (1975); *Busker* v. *United Illuminating Co.*, 156 Conn. 456, 461, 242 A.2d 708 (1968); *Goldman* v. *Feinberg*, 130 Conn. 671, 674, 37 A.2d 355 (1944); *Skene* v. *Carayanis*, 103 Conn. 708, 713–15, 131 A. 497 (1926); *McNary* v. *Chamberlain*, supra, 390; *Bulkley* v. *Storer*, 2 Day 531, 536 (1807). While our cases have not focused with particularity on what acts of interference are tortious, we have made it clear that not every act that disturbs a contract or business expectancy is actionable.

*Jones* v. *O'Connell,* supra, 660–61. "[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." (Citations omitted.) *Kecko Piping Co.* v. *Monroe,* supra, 201–202.

Like the definition that emerges from our own cases, the Restatement (Second) of Torts defines intentional interference with business relations to cover a broad range of behavior.[2] Every act of interference is not, however, made tortious. In the terminology of the Restatement, the test is whether the actor's behavior is "improper." See 4 Restatement (Second), Torts c. 37, introductory note (1979).

---

[2] 4 Restatement (Second), Torts (1979) provides:

"§ 766. INTENTIONAL INTERFERENCE WITH PERFORMANCE OF CONTRACT BY THIRD PERSON

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

"§ 766A. INTENTIONAL INTERFERENCE WITH ANOTHER'S PERFORMANCE OF HIS OWN CONTRACT

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

"§ 766B. INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATION

"One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

"(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

"(b) preventing the other from acquiring or continuing the prospective relation."

The plaintiff argues that in order for his claim to be legally sufficient he need only plead the existence of a business relationship, the defendant's interference and the plaintiff's resulting loss. Although some courts have accepted this definition of tortious interference, placing the burden on the defendant to plead and prove some justification or privilege; see, e.g., *St. Louis-San Francisco R. Co.* v. *Wade,* 607 F.2d 126, 132–33 (5th Cir. 1979); *Buckaloo* v. *Johnson,* 14 Cal. 3d 815, 827–28, 537 P.2d 865, 122 Cal. Rptr. 745 (1975); *Alfred A. Altimont, Inc.* v. *Chatelain, Samperton & Nolan,* 374 A.2d 284, 289 (D.C. 1977); this approach incorrectly relegates the central determination of whether the defendant's behavior was improper to an affirmative defense. In an action for intentional interference with business relations we think the better reasoned approach requires the plaintiff to plead and prove at least some improper motive or improper means. See, e.g., *United Wild Rice, Inc.* v. *Nelson,* 313 N.W.2d 628, 632–33 (Minn. 1982); *Anderson* v. *Dairyland Ins. Co.,* 97 N.M. 155, 159, 637 P.2d 837 (1981); *Straube* v. *Larson,* 287 Or. 357, 361, 600 P.2d 371 (1979); *Leigh Furniture & Carpet Co.* v. *Isom,* 657 P.2d 293, 302–304 (Utah 1982). "[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." *Top Service Body Shop, Inc.* v. *Allstate Ins. Co.,* 283 Or. 201, 209, 582 P.2d 1365 (1978).

In order to determine whether specific acts alleged to constitute tortious interference are improper, we must weigh competing personal and community interests. In a case like the present one, where the claimed impropriety arises out of previous litigation, we may usefully look for guidance to the principles that have evolved to define the tort of malicious prosecution and vexatious litigation, because those kindred torts have

also had to address the competing policies of deterrence of groundless litigation and protection of good faith access to the courts.[3]

We have held that a claim for vexatious litigation requires a plaintiff to allege that the previous lawsuit was initiated maliciously, without probable cause, and terminated in the plaintiff's favor. *Vandersluis* v. *Weil,* 176 Conn. 353, 356, 407 A.2d 982 (1978); *Calvo* v. *Bartolotta,* 112 Conn. 396, 397, 152 A. 311 (1930); *Schaefer* v. *O. K. Tool Co.,* 110 Conn. 528, 532, 148 A. 330 (1930). In suits for vexatious litigation, it is recognized to be sound policy to require the plaintiff to allege that prior litigation terminated in his favor. This requirement serves to discourage unfounded litigation without impairing the presentation of honest but uncertain causes of action to the courts.[4] See, e.g., *Rainier's*

---

[3] 4 Restatement (Second), Torts § 767 (1979) provides:

"FACTORS IN DETERMINING WHETHER INTERFERENCE IS IMPROPER

"In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

"(a) the nature of the actor's conduct,

"(b) the actor's motive,

"(c) the interests of the other with which the actor's conduct interferes,

"(d) the interests sought to be advanced by the actor,

"(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

"(f) the proximity or remoteness of the actor's conduct to the interference and

"(g) the relations between the parties."

[4] 4 Restatement (Second), Torts § 767, comment c (1979): "Litigation and the threat of litigation are powerful weapons. When wrongfully instituted, litigation entails harmful consequences to the public interest in judicial administration as well as to the actor's adversaries. The use of these weapons of inducement is ordinarily wrongful if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudica-

*Dairies* v. *Raritan Valley Farms, Inc.,* 19 N.J. 552, 565–66, 117 A.2d 889 (1955). The requirement furthermore serves the interest of finality of judicial decisions, by preventing a person who was unsuccessful in the original proceeding from relitigating the same issues in a subsequent action for vexatious litigation.

When a lawsuit ends in a negotiated settlement or compromise, it does not terminate in the plaintiff's favor and therefore will not support a subsequent suit for vexatious litigation. See *Baird* v. *Aluminum Seal Co.,* 250 F.2d 595, 601–602 (3d Cir. 1957); *Merritt-Chapman & Scott Corporation* v. *Elgin Coal, Inc.,* 358 F. Sup. 17, 20 (E.D. Tenn. 1972); Prosser, Torts (4th Ed. 1971) § 120; 3 Restatement (Second), Torts § 674, comment j, § 660, comments a, c (1977). This conclusion recognizes that the law favors settlements, which conserve scarce judicial resources and minimize the parties' transaction costs, and avoids burdening such settlements with the threat of future litigation.

While we have not previously considered the relationship between the tort of intentional interference with business relations and the tort of vexatious litigation, we now hold that neither tort action can be maintained when the underlying lawsuit whose propriety is at issue terminated in a good faith negotiated settlement. In these circumstances, there is no basis of policy for distinction between the two torts, and courts in other jurisdictions have similarly concluded. For example, in *Baker Driveaway Co.* v. *Bankhead Enterprises,* 478 F. Sup. 857 (E.D. Mich. 1979), the court held (p. 860) that

tion." See *Leigh Furniture & Carpet Co.* v. *Isom,* 657 P.2d 293, 308–309 (Utah 1982); Prosser, Torts (4th Ed. 1971) § 129; but cf. *McReynolds* v. *Short,* 115 Ariz. 166, 171, 564 P.2d 389 (1977); *Wartensleben* v. *Willey,* 415 P.2d 613, 614–15 (Wyo. 1966); 4 Restatement (Second), Torts § 773 (1979) (litigation or threat of litigation will not support cause of action for tortious interference when pursued in good faith to protect actor's own interests).

a suit alleging that the defendant had maliciously interfered with the plaintiff's commercial relationships by filing a groundless objection to the plaintiff's patent application could not be brought when the proceedings in the patent office had not yet terminated in favor of either party. Such a suit would have interfered with the societal policy permitting the parties to petition the government. Id. In *Rainier's Dairies* v. *Raritan Valley Farms, Inc.*, supra, 563–66, the court disallowed a claim for malicious interference with the plaintiff's business that was grounded on an allegation of malicious institution of administrative license revocation proceedings against the plaintiff. To permit such a claim, the court reasoned, would defeat "the counter-policy in favor of free access to judicial and *quasi*-judicial bodies . . . ." (Emphasis in original.) Id., 564. See also *Hoover* v. *Van Stone*, 540 F. Sup. 1118, 1124 (D. Del. 1982); Perlman, "Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine," 49 U. Chi. L. Rev. 61, 77 (1982); note, "Tortious Interference with Conduct of a Business," 56 Yale L.J. 885, 889 (1947); cf. *Munson Line* v. *Green*, 6 F.R.D. 14, 18 (S.D.N.Y. 1946) (complaint that did not state cause of action for malicious prosecution because of absence of "special injury" did state claim for tortious interference because plaintiff alleged a continuing pattern of malicious and fraudulent behavior by the defendant amounting to "more than a glorified cause of action for malicious prosecution").

The only cases that we have discovered which recognize a cause of action for tortious interference with business relations predicated on previous litigation, alleged to be groundless but not alleged to have terminated in the plaintiff's favor, have done so without any discussion of the competing policies at stake. See *Herbert Products, Inc.* v. *Oxy-Dry Sprayer Corporation,* 1 Misc.

2d 71, 74, 145 N.Y.S.2d 168 (1955); *Erlandson* v. *Pullen,* 45 Or. App. 467, 472, 608 P.2d 1169 (1980). We do not find the holding of those cases persuasive.

We conclude, therefore, that the trial court was correct in its ruling that: "To allege that defendant wilfully and maliciously brought suit for a broker's fee against a corporation in which plaintiff holds stock, the suit ending in settlement, falls short of alleging that defendant wrongfully interfered with a financial expectancy of plaintiff by inducing a third party to fail to perform a contract or to cause a third party from entering or continuing a business relationship with plaintiff."

There is no error.

In this opinion the other judges concurred.