[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by the plaintiff, a police officer employed by the defendant City of Hartford, challenging his demotion from sergeant to patrolman.
In June 1982, the plaintiff was promoted from patrolman to sergeant. Plaintiff completed his probationary period as sergeant on June 15, 1983.
On January 3, 1986, the plaintiff was charged with conduct unbecoming a police officer, and failure to supervise his subordinates. As a result of this charge, the plaintiff filed a grievance and an unfair labor practice claim against the City of Hartford (City).
On April 9, 1986, plaintiff withdrew his grievance and unfair labor practice claim by entering into an agreement with his employer, the City, and the Hartford Police Union[1]. CT Page 7865
The agreement entered into by the plaintiff, the City, and the Hartford Police Union recited the following:
#1. THE UNDERSIGNED, ROBERT DOHERTY, PLEADS GUILTY TO THE FOLLOWING HARTFORD POLICE DEPARTMENT CODE OF CONDUCT VIOLATIONS, WILL [SIC] ALLEGATIONS ARISING FROM THE INVESTIGATION OF AN INCIDENT ON JANUARY 3, 1986 INVOLVING ONE CHRISTOPHER OLSON.
(A) ARTICLE ONE SECTION 1:00 (ON DUTY).
(B) ARTICLE FIVE SECTION 5:01
 IN CONJUNCTION THEREWITH, THE UNDERSIGNED ROBERT DOHERTY FURTHER AGREES TO ACCEPT A NINETY (90) CALENDAR DAY SUSPENSION FROM HIS EMPLOYMENT, COMMENCING APRIL 20, 1986.
#2. THE UNDERSIGNED ROBERT DOHERTY FURTHER AGREES COMMENCING APRIL 20, 1986, HE WILL BE PLACED ON A PROBATIONARY STATUS AS TO HIS RANK AS SERGEANT FOR A PERIOD OF ONE YEAR AS DEFINED IN THE CITY OF HARTFORD PERSONNEL RULES AND REGULATIONS. THE UNDERSIGNED CHIEF BERNARD SULLIVAN AND PRESIDENT JAMES QUIGLEY, OF THE CITY OF HARTFORD AND THE HARTFORD POLICE UNION RESPECTIVELY, FURTHER AGREE THAT THE AFORESAID REINSTITUTION OF PROBATIONARY STATUS IS WITHOUT PREJUDICE OR PRECEDENT.
#3. THE UNDERSIGNED ROBERT DOHERTY FURTHER AGREES, IN CONJUNCTION WITH THE HARTFORD POLICE UNION, TO WITHDRAW, WITHOUT PREJUDICE OR PRECEDENT, A GRIEVANCE CURRENTLY PENDING AT THE THIRD STEP OF THE GRIEVANCE PROCEDURE WHEREIN THE UNDERSIGNED ROBERT DOHERTY REQUESTED THE WRITTEN STATEMENT OF CHRISTOPHER OLSON.
#4. THE UNDERSIGNED ROBERT DOHERTY FURTHER AGREES, IN CONJUNCTION WITH THE HARTFORD POLICE UNION, THAT THE UNFAIR LABOR PRACTICE ALLEGEDLY ARISING FROM THE INVESTIGATION OF THE INCIDENT ON JANUARY 3, 1986, AND KNOWN AS MPP-9809, SHALL BE WITHDRAWN WITHOUT PREJUDICE OR PRECEDENT.
5. THE UNDERSIGNED ROBERT DOHERTY EXPRESSLY WAIVES HIS RIGHT TO A HEARING ON ALL OF THE ABOVE MATTERS, AND ANY APPEALS ARISING THEREFROM. CT Page 7866
The plaintiff served his 90 day suspension period and returned to duty on probation as a sergeant in July of 1986. In September of 1986 the plaintiff received a favorable probationary review.
Prior to the next probationary review, the plaintiff, in two separate incidents in November of 1986, witnessed two altercations between a female police officer and a male police officer. These incidents led to the female police officer filing a complaint of sexual harassment against the male police officer.
The Chief of the Hartford Police Department, Chief Bernard Sullivan, assigned Assistant Chief James K. Fennell to investigate the charge of sexual harassment by the female police officer. The investigation by Assistant Chief Fennell disclosed that the plaintiff had been present during the two incidents giving rise to the claim of sexual harassment.
After Assistant Chief Fennell had concluded his investigation of the sexual harassment charge, Chief Sullivan requested Assistant Chief Ronald Loranger to investigate the plaintiff's involvement in failing to take corrective action after witnessing the two incidents.
Following the investigation by Assistant Chief Loranger, Loranger recommended to Chief Sullivan that the plaintiff's service, as a probationary sergeant, be terminated.[2]
By way of a memorandum dated January 15, 1987, to the Director of Personnel for the City, Chief Sullivan recommended that the plaintiff's probation be terminated and that he be returned to the rank of patrolman.
On January 16, 1987, the Director of Personnel for the City accepted the recommendation of Chief Sullivan to demote the plaintiff.[3] Plaintiff's demotion was effective January 18, 1987, and he was returned to the rank of patrolman.
The plaintiff filed a grievance contesting the termination of his probation and his demotion to patrolman.
On October 14, 1987, an arbitration hearing was held between the City and the Hartford Police Union concerning the grievance filed by the plaintiff. The City challenged the proceeding claiming that this grievance could not be submitted for arbitration.
Article I, Section 1.8 of the contract between the CT Page 7867 City and the Hartford Police Union defines an employee's status with respect to a demotion in rank as follows: ". . . no probationary employee in any promotional classification shall have access to the grievance procedure where the issue is one of demotion."
The Board of Arbitrators decided that Section 1.8 of the contract was controlling and stated "Clearly, there is no access to the grievance procedure, which includes arbitration, when an employee has been demoted under the Contract and Rules. Therefore, the matter is not arbitrable." Plaintiff's Exhibit H. The plaintiff's complaint is in three counts. The first count claims that the grievance settlement of April 9, 1986 contemplated that the plaintiff "would not be subjected to discipline in an arbitrary or discriminatory fashion." Paragraph 18, first count. This first count claims that the City breached the terms of the settlement agreement of April 9, 1986, and breached the collective bargaining agreement and personnel rules of the City.
The second count alleges a breach of good faith and fair dealings in the employment contract and the settlement agreement of April 9, 1986.
The third count is a claim based upon a tortious interference with plaintiff's employment contract with the City and that Chief Sullivan acted in bad faith and with malice in demoting the plaintiff.
The defendants essentially deny the claims and set forth three special defenses. The first special defense is that this case was previously decided by the court, and therefore, the plaintiff is precluded by the doctrine of res judicata from seeking further relief. The second special defense is that the plaintiff failed to exhaust his administrative remedies. The third special defense is that plaintiff's remedy for a tort claim is under the Workers Compensation statute.
The defendants have filed a motion to dismiss this action claiming that the plaintiff has not exhausted his administrative remedies thereby depriving this court of subject matter jurisdiction. This was the same defense previously made in the case of Robert Doherty v. City of Hartford, et al, Docket No. 89-0357804, Superior Court, Judicial District of Hartford/New Britain at Hartford. In that decision, dated November 29, 1989, the defendants' motion to dismiss was granted on the basis that the plaintiff did not exhaust his administrative remedies. The decision of the court was based upon the conclusion that the plaintiff did not file a grievance concerning the CT Page 7868 agreement of April 9, 1986. However, a grievance was filed by the plaintiff regarding the subject matter of the April 9, 1986 agreement. This grievance was resolved and withdrawn upon entering into the agreement of April 9, 1986. Once the agreement of April 9, 1986 was entered into by the plaintiff, the City, and Hartford Police Union there was nothing left to grieve and obviously, nothing to exhaust under the theory of exhaustion of administrative remedies.
In the first count, the plaintiff claims that the agreement that he entered into with the City and the Hartford Police Union on April 9, 1986 was a modification of the collective bargaining agreement without the authority of the City to do so. The plaintiff makes no allegation that the agreement was procured by fraud.
In effect, the plaintiff seeks to set aside the agreement of April 9, 1986, take himself out of the category of probation, and then claim that he was improperly demoted in direct violation of the collective bargaining agreement and the personnel rules of the City.
A review of the collective bargaining agreement between the City and the Hartford Police Union discloses that the agreement contemplates the parties working out their own settlement of their disputes. The Collective Bargaining Agreement sets up a procedure for resolving disputes where the parties have not worked out a settlement. See Article II, Agreement Between the City of Hartford, Connecticut and The Hartford Police Union. Plaintiff's Exhibit A.
By working out an agreement over the January 3, 1986 incident, involving charges of behaving in a manner unbecoming a police officer and failing to supervise subordinates, the plaintiff eliminated the risk of being immediately returned to the rank of patrolman. See Rule 12-1 of the Personnel Rules. Plaintiff's Exhibit B. If plaintiff were demoted and subsequently reappointed to sergeant, he would have had to go through a full probationary period. See Rule 9-1 of the Personnel Rules. Plaintiff's Exhibit B. The plaintiff cannot take the benefits of the agreement of April 9, 1986, and later discard the agreement when it no longer appears to be of advantage to him. "One enjoying rights (under a contract to arbitrate) is estopped from repudiating dependent obligations which he has assumed; parties cannot accept benefits under a contract fairly made and at the same time question its validity." Schwarzschild v. Martin, 191 Conn. 316, 321 (1983).
The plaintiff's basic premise is that the April 9, 1986 Agreement violated the Collective Bargaining Agreement, CT Page 7869 and therefore, was a breach of the Bargaining Agreement. The plaintiff construes the April 9, 1986 Agreement as a disciplinary agreement. However one defines the April 9, 1986 Agreement, the Agreement was voluntarily entered into by the plaintiff. He cannot now claim that it somehow constitutes a breach of the same Collective Bargaining Agreement which formed a basis for the settlement. Id.
The only issue that could be properly grieved by the plaintiff was the issue of his termination of his probation and returning him to the rank of patrolman. The plaintiff did grieve this issue, but as we previously noted, an arbitration board determined that termination of probation was not an arbitrable matter.
Section 1.8 of the Collective Bargaining Agreement, as we have previously noted, excludes probationary employees in a promotional classification from having access to the grievance procedure where the employee was demoted.
As the defendants point out in their trial brief, "neither the agreement nor the Personnel Rules, which are incorporated into the contract under Section 3.3 of the contract, provide for any remedy outside the grievance arbitration process."
Where no provision has been made in the Collective Bargaining Agreement, the plaintiff lacks standing to challenge his demotion as a probationary employee.
"`Standing is not a technical rule intended to keep aggrieved parties out of court. . . . Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forced in hot controversy, with each view fairly and vigorously represented'" (Citations omitted). University of Connecticut Chapter, AAUP v. Governor, 200 Conn. 386, 389
(1986).
Since there are no provisions in the Collective Bargaining Agreement dealing with the demotion of employees in a probationary promotional status, there can be no breach of this Agreement as alleged by the plaintiff. The plaintiff has failed to sustain his burden of proof that the defendant City breached the terms of the Collective Bargaining Agreement and the personnel rules of the City.
As to count two, plaintiff's claim of an implied breach of good faith and fair dealing embodies the same claim CT Page 7870 of the plaintiff in the first count. For the same reasons set forth above, the plaintiff has failed to show any breach by the City of any obligation to act in good faith and to deal fairly.
The basic elements of tortious interference with a contract or business relationship were recently set forth in Robert S. Weiss Assoc. v. Wiederlight, 208 Conn. 525, 535-36
(1988), as follows:
 "`This court has long recognized a cause of action for tortious interference with contract rights or other business relations. (Citations omitted.) [sic] Blake v. Levy, 191 Conn. 257, 260 464 A.2d 52
(1983).'" Solomon v. Aberman, 196 Conn. 359, 364 493 A.2d 193 (1985). Nevertheless, "not every act that disturbs a contract or business expectancy is actionable. Jones v. O'Connell, [189 Conn. 648, 660-61, 458 A.2d 355 (1983)]." Blake v. Levy, supra, 191 Conn. at 260-61, 464 A.2d 52. "`[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously (citations omitted)" [sic]. Id. at 261, 464 A.2d 52 quoting Kecko Piping Co. v. Monroe, 172 Conn. 197, 201-202, 374 A.2d 179
(1977)." [A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means . . . .' [A] claim is made out only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself . . .'" Kakadelis v. DeFabritis, 191 Conn. 276, 279-80, 464 A.2d 57 (1983); see also Sportsmen's Boating Corporation v. Hensley, (1984) (liability in tort imposed only if defendant acted maliciously).
Tortious interference in the employment context was addressed in Murray v. Bridgeport Hosp., 40 Conn. Sup. 56,480 A.2d 610 (1984). In Murray, the plaintiff brought an action against a former employer claiming that the defendants, two executive supervisors, had interfered with her contractual relationship CT Page 7871 with the hospital by failing to conduct a job performance evaluation.
The court found the allegation of tortious interference defective. The court stated that an "agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract." The court held that to do so would effectively hold the principal liable in tort for breaching its own contract.
The plaintiff, therefore, is required to show that the defendant Bernard Sullivan perpetrated a fraud, engaged in misrepresentation, intimidation or acted in any way maliciously.
The plaintiff's evidence attempted to show that Chief Sullivan's actions were motivated by the plaintiff's refusal to socialize with him and by Chief Sullivan's jealousy of the plaintiff's outside business. Chief Sullivan testified that he rarely socialized with sergeants, and that he did not hold any grudge against the 670 police employees on the force with whom he had not socialized. Both Chief Sullivan and Chief Loranger testified that many police officers hold outside employment and that Chief Sullivan had never taken disciplinary action against an employee for doing so.
Based upon credibility of the evidence presented, the plaintiff has failed to sustain his burden of proving that Chief Sullivan acted in any way maliciously or that he had any bad motives in recommending the termination of the plaintiff's probation.
Accordingly, judgment may enter in favor of the defendants on all three counts.
ARNOLD W. ARONSON JUDGE, SUPERIOR COURT