[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Yankee Realty, filed a five-count third revised complaint [hereinafter "complaint"] on May 26, 1988. The plaintiff alleges in its complaint the following facts. Yankee Realty entered into a written brokerage agreement, granting it the exclusive right to sell/lease/exchange property owned by the defendant North Haven Lanes, Inc. Within the time period allotted in the agreement, the plaintiff found a buyer, Spare Time Development Corp. [hereinafter "Spare Time"], to purchase the property in question for the sum of $850,000.00. Subsequently, North Haven Lanes, Inc. and Spare Time rescinded their Purchase and Sale Agreement and the property was sold to Bowling Partners, a partnership made up of James Greco, Joseph Greco, and Lawrence Coassin.
The first count is against North Haven Lanes, Inc. [hereinafter "North Haven Lanes"], alleging breach of an CT Page 7786 exclusive listing agreement to sell the North Haven Lanes' property. The plaintiff seeks $42,500.00 in commission from North Haven Lanes. The second, third, fourth, and fifth counts of the plaintiff's complaint are against James Greco, Joseph Greco, Lawrence Coassin, and Bowling Partners [hereinafter the "Defendants"]. In counts two and three the plaintiff alleges tortious interference with contractual relations. In counts four and five the plaintiff alleges that the Defendants acted in violation of the Connecticut Unfair Trade Practices Act, General Statutes 42-110a through 42-110q [hereinafter "CUTPA"].
The plaintiff attached to its complaint a copy of the listing agreement, which is signed by Anthony Pucinella for Yankee Realty, by Charles Kelley for North Haven Lanes as its president, and by Charles Kelley in his individual capacity. An address appears under the signatures for Yankee Realty and North Haven Lanes, but the space beneath the signature of Charles Kelley is blank. The plaintiff also attached to its complaint a warranty deed, dated May 22, 1987, conveying North Haven Lanes to Bowling Partners. The deed is signed by Charles Kelley in his capacity as president of North Haven Lanes.
The Defendants filed their revised answer [hereinafter "Answer"] to counts two through five of the plaintiff's complaint on January 3, 1989.
The Defendants filed a motion for summary judgment on counts two through five of the plaintiff's complaint and accompanying memorandum of law on February 14, 1992. In their memorandum, the Defendants argue that: the exclusive listing agreement is unenforceable and cannot be the basis of an action for tortious interference with contractual relations; the plaintiff has failed to plead improper motive; the defendants are parties to the original purchase and sale agreement; and because "no interpretation of the facts of this case can possibly translate into a CUTPA violation." The Defendants attached the affidavit of James Greco to their memorandum.
The plaintiffs filed an objection and accompanying memorandum of law to the Defendants' motion for summary judgment on April 29, 1992. In it, the plaintiff asserts that: the exclusive listing agreement complies with Connecticut General Statutes 20-325a and is therefore enforceable; the plaintiff has a valid claim for interference with contractual rights because the exclusive listing agreement is valid and "Spare Time" and "Bowling Partners" are separate parties; and finally, that the plaintiff has alleged valid CUTPA claims. The plaintiff attached to its memorandum the exclusive listing agreement, the rescinded agreement between Spare Time and North Haven Lanes, and the warranty deed. CT Page 7787
The pleadings are closed between the plaintiff and the Defendants who are moving for summary judgment.
A motion for summary judgment may be made after the pleadings are closed between the parties to that motion. Conn. Practice Book 379. Summary judgment will be granted if the moving party proves there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. Conn. Practice Book 384. Lees v. Middlesex Ins. Co., 219 Conn. 644,650, 594 A.2d 952 (1981) (citations omitted). The movant must make a showing that "it is quite clear what the truth is, and that excludes any real doubt as to the existence of any material fact." Plouffe v. New York, New Haven, and H.R.R. Co.160 Conn. 482, 488, 280 A.2d 359 (1971).
I. Tortious Interference with Contractual Relations
In order to sustain a cause of action for tortious interference with contractual relations, the plaintiff must plead and prove that the defendant acted with an improper motive. Robert S. Weiss Associates, Inc. v. Weiderlight, 208 Conn. 525, 536,546 A.2d 216 (1988) (further citation omitted). "`This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation. . . or that the defendant acted maliciously.'" Id., 536, quoting Blake v. Levy,191 Conn. 257, 261, 464 A.2d 52 (1983) (further citation omitted). "The burden is on the plaintiff `to plead and prove at least some improper motive or improper means' on the part of the defendants.'" Solomon v. Aberman, 196 Conn. 359, 365,493 A.2d 193 (1985), quoting Blake v. Levy, supra, 260.
The Defendants contend that the plaintiff has not sufficiently alleged a claim for tortious interference with contractual relations because it has failed to allege improper motive.
The plaintiff alleges in count two of its complaint that the Defendants "were aware of a contract of sale that existed between the Defendant, North Haven Lanes, Inc. and Spare Time Development Corporation for a sale price of $850,000, and despite the knowledge of this contractual agreement entered into a contract to purchase the property." The plaintiff further alleges in count two that as a result of "the Defendants herein above mentioned interference with the contractual rights of Spare Time Development Corporation, the plaintiff, Yankee Realty, Inc. was deprived of a commission in the amount of $42,500. . . ."
In count three of the plaintiff's complaint, the plaintiff alleges that the Defendants were aware of the exclusive right to CT Page 7788 sell agreement and despite this knowledge induced North Haven Lanes to break the contract with the plaintiff.
"It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." Robert S. Weiss Associates, Inc. v. Weiderlight, supra. In Weiderlight, the court held that the assertion that a defendant knew of the existence of a contract, yet "encouraged" the party to contract with them in contravention of the original contract, was not enough to sustain a cause of action for tortious interference with contractual relations. Id., 537. The court stated further: "`[t]o raise an allegation of wilful conduct, the plaintiff must clearly plead that the [harm] was caused by the wilful or malicious conduct of the defendants.'" Id., 537, quoting Warner v. Leslie-Elliot Constructors, Inc., 194 Conn. 129,139, 479 A.2d 231 (1984).
Taking the plaintiff's complaint in its most favorable light, under Weiss, supra, this allegation does not rise to the level of improper motive. Because the plaintiff has failed to plead a necessary element of its cause of action, the Defendants are entitled to judgment as a matter of law. Accordingly, the Defendants' motion for summary judgment on counts two and three of the plaintiff's complaint is granted.
II. CUTPA
The Defendants argue, without elaboration, that they are entitled to summary judgment on counts three and four of the plaintiff's complaint because the plaintiff "has not and cannot allege, as it must, that the defendants. . . engaged in activities that amounted to a violation of public policy or unethical or unscrupulous conduct." The Defendants further argue that the listing agreement is unenforceable because Connecticut General Statutes 20-235a prohibits an action for commission on the basis of a listing agreement which does not comply with the terms of the statute. Since the plaintiff's CUTPA claim is essentially an alternative method to seek commission based upon an unenforceable listing agreement, the Defendants argue, citing McCutcheon 
Burr, Inc. v. Berman, 218 Conn. 512, 590 A.2d 438 (1991), that Connecticut General Statutes 20-325a precludes the plaintiff's CUTPA claim.
 a. Whether the plaintiff's CUTPA claim is legally sufficient.
The plaintiff contends, relying on Murphy v. McNamara,36 Conn. Sup. 183, 188, 416 A.2d 170 (1979), that CUTPA must be liberally construed and is not confined to those practices that were illegal at common law or prohibited by statute. CT Page 7789
The relevant provisions of CUTPA are as follows:
 42-110b(a) No person shall engage in unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce.
 42-110a(4) "Trade" and "commerce" means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state.
 42-110g(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action. . . to recover actual damages. Proof of public interest or public injury shall be required. . . .
In order to determine if a practice is unfair in violation of CUTPA, the courts have applied the following standard which has been deemed the "cigarette" rule:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]. . . .
Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 105-106,612 A.2d 1130 (1992). (further citation omitted). It is not necessary that the allegedly unfair practice meet all three of the above criteria, "`[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.'" Id., 106. (further citation CT Page 7790 omitted).
Whether a practice is unfair under CUTPA is a question of fact. DeMotses v. Leonard Schwartz Nissan, 22 Conn. App. 464,578 A.2d 144 (1990).
In count four of its complaint, the plaintiff alleges that the Defendants engaged in unfair and deceptive acts which include, but are not limited to, one or more of the following:
 (a) In that they, knowing that the co-defendant, North Haven Lanes, Inc., had already entered into a contract to sell certain Real Estate. . . entered into a contract to purchase the very same real estate, despite the fact that they knew that the contract. . . would deprive Yankee Realty of a commission in the amount of $42,500.00 all to the financial loss and detriment of Yankee Realty;
. . .
 (c) That the Defendants herein, encouraged North Haven Lanes, to breach its contract with Spare Time Development Corporation, in order to further their own financial interests, when they knew that such encouragement would result in a loss of commission in the amount of $42,500,00 to the plaintiff, Yankee Realty, and when they further knew that under the terms of the initial contract of sale, Yankee Realty was owed such commission. . . .
Count five contains generally the same allegations as count four, but adds that the Defendants were aware of the obligation of North Haven Lanes to pay Yankee Realty 5% commission if a ready, willing, and able buyer were procured, yet they encouraged North Haven Lanes to ignore its obligation. Count five also alleges that the Defendants interfered with the initial purchase and sale agreement and entered into a subsequent contract to purchase the same property knowing that the plaintiff would only be entitled to one-half the commission due and owing under the original contract. The plaintiff further alleges that they, "through written and oral correspondence, agreed. . . or otherwise conspired, to deprive and defraud Yankee Realty of the full sales commission to which they were entitled." CT Page 7791
Although the determination of whether the Defendants' actions violated CUTPA is ultimately a question for the trier of fact; DeMotses v, Leonard Schwartz Nissan, supra; taking the plaintiff's allegations in their most favorable light, the plaintiff has plead a legally sufficient cause of action under CUTPA.
 b. Whether General Statutes 20-325a(b) precludes the plaintiff's CUTPA claims.
The Defendants contend that the plaintiff's CUTPA claim is barred by Connecticut General Statutes 20-325a because it is really an action seeking commission which is based upon an unenforceable listing agreement. The Defendants argue that the listing agreement does not comply with the statute, and is therefore unenforceable because it does not contain the names and addresses of all the parties.
In McCutcheon the plaintiff sought damages under CUTPA alleging that "the defendants engaged in unfair or deceptive acts when they allegedly refused to sell. . . [the property] for the agreed price because the plaintiff would not compromise all on part of its commission." McCutcheon, supra, 529 n. 19. The court held that the plaintiff's claim was barred by Connecticut General Statutes 20-325a because it "simply states an alternative means for attempting to collect the commission provided for in the [unenforceable] listing agreement." Id., 529. The McCutcheon court distinguished Dow Condon, Inc. v. Anderson, 203 Conn. 475,525 A.2d 935 (1987). The McCutcheon court stated that "the CUTPA claim in Dow, unlike the CUTPA count in the present case, did not arise solely from the listing agreement. We specifically noted in that case that the CUTPA claim was not brought simply as a means of enforcing its listing agreement, but rather was an attempt by the plaintiff to recover for the deceptive practices of the defendants." McCutcheon Burr, Inc. v. Berman, supra, 529, citing Dow Condon, Inc., supra.
The plaintiff alleges that the Defendants induced the defendant North Haven Lanes to breach its contract. The plaintiff, in the instant case, as the plaintiff in Dow, supra, seeks damages for the allegedly unfair practices of the Defendants inducing breach of contracts. Therefore, the plaintiff's action is not merely an alternative method of seeking commission, and, accordingly Connecticut General Statutes20-325a does not preclude the plaintiff's CUTPA claim.
The Defendants' motion for summary judgment on counts two and three of the plaintiff's complaint is granted because the plaintiff has failed to plead a necessary element of a cause of action for intentional interference with contractual relations. CT Page 7792
The Defendants' motion for summary judgment on counts four and five of the plaintiff's complaint is denied because the plaintiff has set forth a legally sufficient cause of action under CUTPA.
Howard F. Zoarski, Judge