[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The facts in this case are rather simple. The plaintiff's mother, Anne T. Ekman, died in January of 1999 while residing in Unit 419B at the Tide Harbor Condominium B at 1460 Elm Street in Stratford, Connecticut. The plaintiff was appointed her executor. The unit had not been upgraded in several years. The plaintiff was on the premises shortly after his CT Page 13468-md mother's death and noticed that the carpet in front of the sliding glass doors leading to a balcony off the living room was wet and odorous. Upon further investigation, he found the sheetrock and wood around the opening wet, rotted and mildewed. He realized it would all have to be replaced. Apparently water came into the unit from the balcony and this problem was not limited to this unit only. The plaintiff testified that before his mother's death the door, which was over thirty years old, did not work properly and his mother was unable to open it. He decided to remodel the unit before trying to sell it.
The plaintiff talked to Mr. Jerry McCarthy, the property manager of the condominium, who told him the problem with the sliding doors was the owner's problem, not the condominium's. The plaintiff explained that he wanted to change the eight foot doors with six foot doors with a transom. McCarthy advised him he could not and must use the eight foot doors to be in compliance with the condominium rules. The problem became worse when the existing glass in the eight foot doors shattered. The plaintiff testified that it took him a long time to buy the eight foot doors, and when they were delivered and hoisted to the fourth floor, he could not install them because the frame was off kilter and would not accept them. He thereafter purchased six foot doors and the transom and installed them for which he paid $1,590.47.
The plaintiff originally listed the unit for sale on May 2, 1999. He blames the delay in listing it as arising from the problem with the sliding doors to the balcony. He found a buyer, Fernande M. Routhier, and went to contract on June 30, 1999, for a purchase price of $93,750.
Thereafter, Mr. McCarthy became aware of the installation of the six foot doors and entered the premises to confirm that fact. He then wrote a letter to the prospective purchaser's attorney, Peter Kaiser, advising him that the six foot doors altered the exterior appearance of the unit and that the buyer would be held responsible for correcting the violation. This almost killed the deal, but the closing did go forward with the provision for a $3,000 escrow to remedy the problem with the doors if required in the future.
The defendants have initiated no action against Mr. Routhier to correct the alleged violation and have taken no action against several other unit owners who have apparently also changed their doors leading to the balcony from eight feet to six feet. They apparently believe this case will answer those issues. It will not. CT Page 13468-me
There was also a dispute as to whether the existence of the six foot doors and transom were observable from the driveway in front of the condominium. The Ekmans say "no" and Mr. McCarthy and the condominium board's president say "yes." It makes no difference in the disposition of this case.
Section 11(g)(i) of the Association's ByLaws on page 26 entitled "Abatement and Enjoinmnet of Violation by Unit Owners" (defendant's exhibit A) states that the Association may enter any unit in which a violation or break exists. It is that section the defendants claim authorized Mr. McCarthy's entry into Unit B419 to confirm the installation of the six foot doors which the Association claims is in violation of its bylaws.
Reference must now be made to the plaintiff's Revised Complaint of July 31, 2000, the operative complaint in this case. The first count against James McCarthy is "for tortious interference with business relations", and bases the claim on Mr. McCarthy's letter of August 5, 1999, to Attorney Peter Kaiser, who represents the contract purchaser wherein he makes reference to the six foot doors which he claimed were in violation of the associations bylaws. The second count is against Tide Harbor Towers Condominium Association B, Inc. It incorporated the first 18 paragraphs of the first count and concludes that this defendant, which authorized McCarthy to send his letter to Attorney Kaiser on August 5, 1999, is answerable to plaintiff in damages for interference with business relations. The fourth count against Tide Harbor Towers Master Condominium Association, Inc., mirrors the second count and asks for damages and attorney's fees for tortious interference with business relations again arising out of the authorization of McCarthy's letter to Attorney Kaiser of August 5, 1999.
The defendants on those counts answer that the installation of the six foot doors violated the bylaws because they changed the outside appearance of the building, that they had a right to inspect the premises to establish the existence of the violation, and they had a right and an obligation to so advise the prospective purchaser. The court does not have to determine those issues to render a decision on those counts. The closing did in fact take place and a $3,000 escrow was set up to provide for the replacement of the doors should the defendants ever pursue that remedy which they have not to this time. The plaintiff has the burden of proof, and he has failed to establish any of the elements of a tortious interference with contract or business relations and judgment will enter for the defendants on counts one, two and four. See Blake v. Levy,191 Conn. 257, 260 (1983). CT Page 13468-mf
As to counts three and five, they again basically mirror each other and make the same claims. They each seek mandatory injunctive relief. Count three is against Tide Harbor Towers Condominium Association B, Inc., and count five is against Tide Harbor Towers Master Condominium Association, Inc. In paragraph 29 of the third count and paragraph 22 of the fifth count the plaintiff claims, "In order to satisfy his indemnity undertaking, plaintiff must dispose of the threat to require plaintiff's contract purchaser to revert to an eight foot tall sliding door, the existence of which threat is oppressive to the plaintiff and a source of constant anxiety to him." The plaintiff then pleads that he will suffer irreparable harm and has no adequate remedy at law. Those claims are prerequisites for the court to render injunctive relief and neither one has been established. As to the claim of irreparable harm, at most the plaintiff has had $3,000 held in escrow from the closing on his mother's condominium to pay for the costs of installing an eight foot door on the premises. Whether the condominium association will ever take action is unknown. The most that the plaintiff has at risk is $3,000. He cannot be liable for more. There was some talk of a bond the plaintiff put up, but no one offered any evidence as to its contents or consequences. The court cannot find the existence of any irreparable harm.
As for the claim of no adequate remedy at law, that simply is not the case. Should the condominium association attempt to litigate its claims in court against the new owner of unit 419B, this plaintiff could intervene in that case. On the other hand, the association may just decide to abandon its claim as to this unit or the other units wherein six foot replacement doors have been installed.
There may have been other causes of action the plaintiff could have initiated to get to the issue as to the legality of the six foot doors or whose obligation it was to replace them, but the court is limited to the allegations made. Finding no evidence to support either the claim of irreparable harm or an inadequate remedy at law to support a claim for injunctive relief, the court enters judgment for the respective defendants as to counts three and five.
GORMLEY, J.
CT Page 13469