**UNITED RENTALS, INC. and United Rentals (North America), Inc., Plaintiffs,**

v.

**Jeremiah PRICE, Defendant.**

**No. 3:06cv1602 (JBA).**

United States District Court, D. Connecticut.

Feb. 12, 2007.

United and Price, and asserting claims for breach of contract, misappropriation of trade secrets in violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen.Stat. § 35–51, *et seq.* ("CUTSA"), and tortious interference with economic advantage and existing business relationships. *See* Compl. [Doc. # 1].

On December 19, 2006 the Court granted plaintiffs' Motion for Default Entry due to defendant's failure to appear or respond to the Complaint, *see* Order [Doc. # 9]. Notwithstanding the appearance of counsel filed on behalf of defendant on January 8, 2007 [Doc. # 10], the filing of an Answer to plaintiffs' Complaint on January 17, 2007 [Doc. # 11], and the filing of a Demand for Trial by Jury filed on January 17, 2007 [Doc. # 12], defendant has made no motion to set aside the entry of default, and plaintiffs thus filed the instant Motion for Entry of Default Judgment on January 18, 2007 [Doc. # 13], to which defendant also has not responded.[1] For the reasons that follow, the Motion will be granted.

Brian C. Roche, Gerald C. Pia, Jr., Roche Pia LLC, Shelton, CT, for Plaintiffs.

Kerry R. Callahan, Updike, Kelly & Spellacy, P.C., Hartford, CT, for Defendant.

**RULING AND ORDER ON PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT [DOC. # 13]**

ARTERTON, District Judge.

Plaintiffs United Rentals, Inc. and United Rentals (North America), Inc. (collectively "United"), commenced this action against their former employee Jeremiah Price alleging willful breach of confidentiality clauses and restrictive covenants contained in a non-competition and confidentiality agreement entered into between

## I. Factual Background

Because default has entered against Price, the Court accepts as true all of the factual allegations of the Complaint, except those relating to damages. *See Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981). The Complaint recites that at all times relevant to the action up until August 4, 2006, Price served as an Outside Sales Representative of United's Charlotte, North Carolina Branch. Compl. ¶ 7. United is in the business of "renting and selling equipment and merchandise to the commercial and general public, including construction equipment, landscaping equipment, and home repair and maintenance equipment." *Id.* ¶ 2. As an Outside Sales Representative at United, Price "had

---

**1.** Docket entries # 14 and # 15, are, as noted on the docket sheet, duplicate entries of defendant's Answer and Demand for Trial by Jury, also docketed as # 11 and # 12.

controlled access to certain of United's trade secrets," including: "(1) gross sales and rental data; (2) budget processes from market areas and sales rental projections; (3) marketing plans and strategies; (4) details of contracts; (5) actual and prospective customer data, including identities of United customers (i.e. United's customer list and customer contacts); (6) pricing and discount information; (7) cost information, including special programs and discount structures negotiated with particular equipment vendors; (8) information on the sources and nature of financing United is able to secure for its customers; and (9) fleet information, including its make-up, cost and utilization." *Id.* ¶ 9. "Much of United's confidential information is contained on United's RentalMan/WYNNE computer system, access to which is password protected and limited to higher level employees," including Price, who "regularly utilized the RentalMan/WYNNE computer system during his tenure as an Outside Sales Representative." *Id.* ¶ 10. "None of the [claimed] trade secrets ... were known or open to the public and United undertook reasonable measures to keep the trade secrets confidential and out of the public domain." *Id.* ¶ 1.

As part of his employment at United, Price entered into an agreement with United (the "Agreement"), which contained provisions prohibiting disclosure of confidential and company property and information, *see* Agmt. [Doc. # 1, Ex. A] at ¶ 2(a)-(e), which confidential information was defined to include: "(i) business, pricing and management methods; (ii) finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions; (iii) names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives with other persons who have business relationships with the Company or who are prospects for

business relationships with the Company; (iv) technical information, work products and know-how; (v) cost, operating, and other management information systems, and other software and programming; and (vi) the name of any company or business, all or any substantial part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects." *Id.* ¶ 2(f)(i)-(vi). The Agreement also contained a restrictive covenant "that restricted [defendant] from competing directly or indirectly with United anywhere within the limited area of a 50 mile radius of the Charlotte Branch during his employment and 12 months thereafter." Compl. ¶ 15 (citing Amgt. ¶ 3(a)). The Agreement also contained a requirement that Price "provide United with written notice of any person or entity with which Price intended to accept employment within the 12 month period following his employment with United." *Id.* ¶ 16 (citing Agmt. ¶ 3(c)).

According to the Complaint, on August 4, 2006 Price terminated his employment and advised his Branch Manager that he would be taking a position outside of the equipment rental industry. *Id.* ¶ 19. Shortly thereafter, however, United learned that Price had in fact taken a position with Volvo Rents a/k/a R & B Management LLC, which "competes directly with United for customers in the general rental equipment business" only two miles from United's Charlotte Branch. *Id.* ¶¶ 18–19. Price did not advise United that he had obtained a position with Volvo, *id.* ¶ 19, "began performing many of the same functions for Volvo, and for Volvo's

benefit, that he performed for United [and] used or inevitably will use the valuable confidential trade secrets of United and/or provided [them] to Volvo." *Id.* ¶¶ 20–21. The Complaint also alleges that "Price began alerting customers of United that he would be commencing work at Volvo even prior to resigning from his position at United." *Id.* ¶ 22.

## II. Discussion

### *Breach of Contract (Count 1)*

▆ Accordingly, United's first count is for breach of contract, alleging violation of the Agreement by defendant, including by the unauthorized use and provision of United's trade secrets to Volvo in violation of Paragraph 2 and violation of the noncompete covenant contained in Paragraph 3.

▆ "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Chiulli v. Zola,* 97 Conn.App. 699, 905 A.2d 1236, 1242–43 (2006). Here, United alleges formation of contract, performance by United of its obligations thereunder, and breach of the contract by Price by becoming employed with Volvo without notice to United and within the restricted area prohibited in the Agreement, and by using and/or disclosing United's confidential information. United also alleges damages including in the form of "damages to its business and customer good will." Compl. ¶ 34. In its Motion for Entry of Default Judgment, United seeks injunctive relief as well as attorneys fees and costs pursuant to Paragraph 5(e) of the Agreement ("In the event any part hereto institutes any proceeding against any other party with respect to any controversy or matter arising out of this Agreement, the prevailing party shall be entitled to recover from the nonprevailing party such prevailing party's reasonable attorneys' fees and costs incurred in connection with any such proceeding").

United having pled all of the elements of a breach of contract claim, and all factual allegations being deemed admitted due to the entry of default against defendant, United's Motion as to the breach of contract claim will be granted and the injunctive relief sought will be ordered. Although United's affidavit accompanying its Motion represents that it has incurred $4,187.78 in fees and costs through December 31, 2006, no time and task detailing by attorney affidavit or other documentation of those costs and fees has been provided and the Court therefore lack any basis for determining whether the requested sums constitute "reasonable attorneys' fees and costs" pursuant to the Agreement, ¶ 5(e).

### *Connecticut Uniform Trade Secrets Act (Count 2)*·.

▆ United also alleges that Price violated the CUTSA by misappropriating United's trade secrets for his and Volvo's own use. Conn. Gen.Stat. § 35–51, defines "misappropriation" as:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was (i) derived from or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . .; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) before a material change of his position, knew or

had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Here, United's factual allegations, which are deemed admitted, establish that defendant misappropriated trade secreted material, inasmuch as the claimed material was proprietary, confidential, and not known to the public, and United took reasonable measures to protect its confidential nature, by using that material and disclosing it in the context of his employment at Volvo. The Complaint also alleges that Price committed misappropriation "willfully and maliciously . . . in that [he] intended to solicit customers for the benefit of Volvo and his own personal financial interest, all to the detriment of United." Compl. ¶ 45. Accordingly, pursuant to Conn. Gen.Stat. §§ 35–52 and 35–53, United is entitled to injunctive relief and actual damages, in addition to punitive damages and attorneys fees as willful and malicious misappropriation is established. As above, however, United seeks only injunctive relief and attorneys fees and costs. The injunctive relief will be granted; attorneys fees and costs cannot be awarded on this record.

*Tortious Interference (Count 3)*

United also brings a claim for tortious interference with its prospective economic advantage and its existing business relationships with customers by defendant's disclosure of United's confidential trade secrets and proprietary information to Volvo and by his solicitation of United's customers.

"A claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) the defendant['s] knowledge of that relationship, (3) the defendant['s] intent to interfere with the relationship, (4) [that] the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendant['s] tortious conduct."

*Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 757 A.2d 1059, 1063 (2000). However, "not every act that disturbs a contract or business expectancy is actionable. . . . For a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . An action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . . The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification. . . . In other words, the employee bears the burden of alleging and proving lack of justification on the part of the actor." *Daley v. Aetna Life & Cas. Co.,* 249 Conn. 766, 734 A.2d 112, 135 (1999) (internal quotations omitted); *accord Blake v. Levy,* 191 Conn. 257, 464 A.2d 52, 55 (1983) ("[A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. A claim is made out only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.") (internal quotations omitted).

Here, United's allegations, which are deemed admitted, establish such a claim: United pleads the existence of beneficial contractual relationships with its customers, of which defendant, as an Outside Sales Representative for United, was aware, and that defendant acted intentionally and willfully and with "full knowledge and/or recklessness and want of ordinary care in that [his] acts or omissions would necessarily interfere with or disrupt the economic relationships that United en-

joyed with its customers and other entities." Compl. ¶¶ 57, 60. United also alleges that Price's conduct was done to further his own, and Volvo's, personal financial gain, and that "[i]f not for the conduct of Price, United was reasonably certain to have entered into continued business relationships with its customers."

Accordingly, United is entitled to damages including compensatory and injunctive relief, although United seeks only the latter, which will be granted. United also seeks attorneys fees and costs constituting punitive damages but, again, such a determination cannot be made on this record.

## III.  Conclusion

For the foregoing reasons, plaintiffs' Motion for Entry of Default Judgment [Doc. # 13] is GRANTED and judgment shall enter in their favor.

It is ORDERED that defendant is hereby enjoined, pursuant to the terms of the Agreement between defendant and United, from:

(1) Directly or indirectly being employed or retained by, or rendering any consulting, brokerage, contracting, financial, or other services or advice to, any business in competition with United, including but not limited to Volvo, anywhere within a 50–mile radius of United's Charlotte Branch for the 12–month period following the date of the termination of plaintiff's employment with United, *i.e.*, until August 4, 2007;

(2) Directly or indirectly owning any interest in any business that competes with United until August 4, 2007;

(3) Directly or indirectly approving, soliciting, retaining, or discussing the employment or retention, of any person who was an employee of United during the 12–month period preceding the defendant's resignation from United until August 4, 2007;

(4) Directly or indirectly soliciting or encouraging any person to leave the employ of United until August 4, 2007; and

(6) Directly or indirectly disclosing or otherwise using any of United's confidential trade secrets, as defined and described in Paragraph 2 of the Agreement, for any purpose whatsoever.

The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.