[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT VARCO-PRUDEN BUILDINGS, INC. MOTION TO STRIKE (#165)
This case involves a dispute between a building owner and a number of contractors. One of the contractors, the defendant, Varco-Pruden Buildings, Inc. (VP), has moved to strike Counts 17, 24, 25, 29, and 30 of the plaintiff's Second Amended Complaint on the basis that they are barred by the economic loss doctrine. The plaintiff claims that no appellate court in Connecticut has applied the economic loss doctrine to a building contract dispute. In addition, VP claims that Count 17 of negligent interference with business relations should be stricken because Plaintiff Worldwide has failed to plead a legally sufficient cause of action.
 PROCEDURAL FACTS
Worldwide's prior complaint was the subject of a similar motion to strike filed by VP. On May 12, 1999, this court granted the motion to strike from the bench without a written decision, on the basis that the economic loss doctrine prevented Worldwide's tort claims. On May 12, 1999, this court denied that portion of VP's motion to strike relating to the count of negligent interference with business relations.
In response thereto, the plaintiff filed a Second Amended Complaint dated November 12, 1999. On January 10, 2000, VP filed this motion to strike five counts. These five counts are: Count 17, negligent interference will business relations; Count 24, unfair acts in violation of Connecticut Unfair Trade Practices Act (CUTPA); Count 25, deceptive acts in violation of CUTPA; Counts 29, substantial assistance/aiding and abetting liability; and Count 30, civil conspiracy. VP has moved to strike these five counts on the basis of the economic loss doctrine asserting they seek tort remedies, which are prohibited in contract commercial litigation. VP claims that the economic loss doctrine should be applied in Connecticut. VP recognizes that no appellate court has applied the economic loss doctrine in a building contract dispute.
In addition, VP has moved to strike Count 17, negligent interference with business relations, because Worldwide has failed to plead a legally sufficient cause of action. VP correctly notes that a similar motion was denied by this court. VP now claims that there are new facts; therefore, it wishes the court to revisit this issue. CT Page 1853
The parties briefed the issues and presented oral argument. So too, did a companion defendant, Needham and Associates, Inc., an engineering firm, on its motion to strike dated January 26, 2000, which also addressed the economic loss doctrine. This court will deal with the issues raised in the Needham motion in a separate decision.
 FACTS
This lawsuit arose out of the construction of a building for the plaintiff, Worldwide Preservation Services, L.L.C. The plaintiff had a written agreement with the IVth Shea, L.L.C., a New York limited liability company. The contract called for a pre-fabricated, pre-manufactured steel commercial building to be manufactured and delivered to the site. The manufacturer was the defendant, VP, a Delaware corporation. The manufacturer of the steel used in the construction of the building is the defendant, PKM Steel Service, Inc., a Kansas corporation. The engineering company in charge of the design of the steel building components was the defendant, Needham and Associates, Inc. an Indiana corporation with offices in Kansas. Worldwide has alleged that the steel was improperly manufactured and designed.
The complaint alleges that on January 17, 1997, the IVth Shea individually and as agent of VP, entered into a written purchase order to engineer, manufacture and deliver to a specified site, a pre-engineered building, pursuant to design and specifications of Worldwide's architect. The architect is not party to this lawsuit. Worldwide further alleges that VP then entered into a contract with Needham to design and engineer the steel components to be used to manufacture the building. The complaint further alleges that VP then entered into a contract with PKM to manufacture the steel components. The plaintiff alleges that it was the intended beneficiary of both the VP/Needham and VP/PKM contracts. The defendants were not to erect the building.
The original complaint contained nineteen counts. Those counts alleging contract or quasi contract are: breach of contract, breach of personal guarantee, breach of duty of good faith and fair dealing, breach of express warranty, breach of warranty of workmanlike condition, breach of warranty of merchantability, breach of warranty of fitness for a particular purpose and unjust enrichment. The remaining eleven counts sounded in variety of tort claims: fraud, intentional misrepresentation, reckless misrepresentation, negligent misrepresentation, innocent misrepresentation, duress, negligence, tortious interference with business relations, negligent interference with business relations, CT Page 1854 recklessness, and violation of CUTPA.
The complaint against VP has been distilled to twelve counts. Worldwide withdrew the following tort claims against VP: fraud, intentional misrepresentation, reckless misrepresentation, negligent misrepresentation, innocent misrepresentation, duress, negligence and recklessness. The two new counts of substantial assistance/aiding and abetting liability and civil conspiracy were added against VP. The seven referenced contract and quasi contract counts remain. VP was not sued in the personal guarantee count. The remaining five tort counts are the subject of this motion. In the event that VP's Motion to Strike is granted, the remaining seven counts against VP will sound only in contract or quasi contract.
 DISCUSSION OF LAW
This court has applied well known principles in deciding this Motion to Strike. Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269,270-71 (1998); Pitts v. Carabillo, Superior Court, judicial district of Danbury, Docket No. CV99-0334727 S (May 22, 2000, Carroll, J.) (2000 Ct. Sup. 6048). This court does not need to restate those principles.
"The economic loss rule is that, in the absence of privity of contract between the plaintiff and the defendant, or, in the absence of an injury to the plaintiff's person or property, the plaintiff may not recover in tort for a purely economic loss." Amity Regional School District v. AtlasConstruction, Superior Court, judicial district of Waterbury, Docket No. X06-CV99-0153388 S (July 26, 2000, McWeeney, J.) (6 Conn. Ops. 895);Connecticut Mutual Life Ins. Co. v. New York New Haven R. Co.,25 Conn. 265, 276 (1856). The parties are left to their contract type remedies such as UCC claims. No appellate court in Connecticut has applied the economic loss rule in a building contract case. The economic loss doctrine has been discussed in a number of Superior Court decisions. It is a "judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic." Darien Asphalt Paving Inc. v. Town ofNewtown, Superior Court, judicial district of New Britain, Docket No. CV 98-04878 (December 7, 1998, Nadeau, J.) (23 Conn.L.Rptr. 495) (1998 Ct. Sup. 14034). A number of jurisdictions have recognized the economic loss doctrine. It been applied in other jurisdictions in order to bar a contractor from making a tort claim against design professionals for economic loss when there is no privity. Widett v. United States Fidelity Guaranty Co., 815 F.2d 885, 887 (2nd Cir. 1987); 2314 Lincoln ParkWest Condominium Assn. v. Mann, Gin, Ebel Frazier, Ltd., 555 N.E.2d 346, CT Page 1855 353 (Ill. 1990).
This court, in its decision from the bench from May 12, 1999, recognized the economic loss doctrine and applied it to the facts of this case, striking the various tort claims. This court did so in reliance on language used in Flagg Energy Development Corp. v. General Motors Corp.,244 Conn. 126, 153 (1998).
Flagg Energy dealt with a Uniform Commercial Code claim by a buyer of allegedly defective energy goods, gas turbine generators, manufactured by the defendant for a construction project in a co-generation plant in Hartford, CT. The plaintiff sought damages for breach of express and implied warranties and added tort claims against the defendants for misrepresentation and CUTPA. The court determined that the plaintiff's complaint did not state a valid cause of action for misrepresentation and CUTPA, holding that actions for commercial losses arising out of a contract for the sale of goods cannot be combined with actions for negligent misrepresentation. "We agree with the holdings of cases in other jurisdictions that commercial losses arising out of the defective performance of contracts for the sale of goods cannot be combined with negligent misrepresentation." Flagg Energy Development Corp. v. GeneralMotors Corp., supra, 244 Conn. 153. The rationale was drawn from a Virginia case: "The parties are sophisticated corporations familiar with the type of services rendered, and the consequences of a mechanical failure likely to result from a failure to perform the contract as promised. The parties were free to allocate the risks, insure against potential losses, and adjust the contract price as they deemed most wise. This Court sees "no reason to extricate the parties from their bargain'."Princess Cruises, Inc. v. General Electric Co., 950 F. Sup. 151, 155
(E.D. Va. 1996). "But to permit a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of the parties to allocate the risks of their own transactions." Id. 155. "Almost every breach of contract involves actions or inactions that can be conceived of as a negligent or intentional act. If left unchecked, the incessant tide of tort law would erode and eventually swallow contract law. This Court believes that if tort law and contract law are to fulfill their distinctive purposes, they might be distinguished where it is possible to do so. The economic loss doctrine serves as a basis for such a distinction." Id. 155. Using a case specific metaphor the PrincessCruises court concluded: "This Court must follow the Supreme Court's effort in East River to prevent contract law from drowning in a sea of tort." Id. 156 (citing East River S.S. Corp v. Transamerica Delaval,Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). CT Page 1856
Although the claims by Worldwide in this case arise out of a building construction contract it has common features with the facts of FlaggEnergy. The Flagg Energy case involved the off site manufacturing of gas turbine generators to be later installed within a building. Portions of the building in this case were pre-manufactured and pre-engineered for a specific construction site. In addition, the Supreme Court relied on thePrincess Cruises case which involved the obligation to inspect and repair turbines in a large cruise ship. Although a cruise ship is not a building, it contains all the components of a building and in fact is substantially larger than the plaintiff's structure.
The plaintiff argues that the economic loss holding in Flagg Energy is only limited to the sale of goods, stating that it is a UCC case. This court does not see that limitation in Flagg Energy. Flagg Energy involved not a pure contract sale of goods, but the manufacturing off-site of large components to be later construed as part of a large building. Product liability law was also referred to in portions of the decision.Flagg Energy cited a Pennsylvania case, Duguesne Light Co. v.Westinghouse Electric Corp., 66 F.3d 604, 618 (3d Cir. 1995). Duguesne
involved the installation of a manufactured steam energy system into a building housing a nuclear energy generating facility. The steam energy system sold by Westinghouse consisted of a nuclear reactor, three steam generators and other components that together converted heat from nuclear fission into steam. "When loss of the benefit of a bargain is the plaintiff's sole loss . . . the undesirable consequences of affording a tort remedy in addition to a contract-based recovery [are] sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims." Id. 619. The United States Court of Appeals, Third Circuit concluded: "The economic loss doctrine . . . covers situations in which a party in privity of contract with another suffers an injury to a product itself, resulting in purely economic loss." Id. 620. Duquesne discussed the type of losses covered by the economic loss doctrine: lost profits, loss of the contractual bargain and the purchaser's disappointed expectations as to the product he purchased. Id. 18-19. Flagg Energy is more of a building contract case than a UCC sale of goods case. Flagg Energy, Princess Cruises, and Duquesne are markedly similar to the claim in this case. The steel manufactured off-site in this case was brought to the building site to be constructed within the building. It does not appear that the Flagg Energy has been limited to merely product liability considerations. Id. 153. The facts of this case fit into the Flagg Energy holding and that alone is sufficient for the economic loss doctrine to be applicable. CT Page 1857
The economic loss doctrine has been well settled in many jurisdictions for over 50 years. Three rationales have been used to eliminate tort liability based on the economic loss doctrine in construction contracts: (1) it maintains the fundamental boundaries of tort and contract law by limiting the economic loss arising in construction projects to the remedies provided by the parties' contracts; (2) the doctrine is essential to the dynamics of the construction arena. If tort and contract remedies were permitted to overlap, uncertainty and unpredictability in allocating risk would increase and impede future business activity; and (3) the law of tort is primarily concerned with the protection of persons and property from losses resulting from injury while the policy considerations underlying contract law is the protection of expectations bargained for, such as profits." Louis R Pepe and James Budinetz, "The Death Knell of the Economic Loss Doctrine in Connecticut," 17 CTLA Forum, January/February 1999.
The economic loss doctrine had its genesis in California in 1965. Seelyv. White Motor Co. 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, (1965) (no recovery for loss of earnings from a defective truck manufactured by defendant). The United States Supreme Court adopted the doctrine in 1986, East River S.S. Corp. v. Transamerica Delaval, Inc. supra,476 U.S. 858. Since Seely v. White Motor Co., a number of federal and state courts have abandoned the economic loss doctrine: the 5th
Circuit, the District of Columbia Circuit, Mississippi, South Carolina, Rhode Island, Arizona, Florida, Alabama, Maine, Alaska, Louisiana, New Jersey and North Carolina. See the following law review articles discussing both sides of the issue: Hal G. Block, "As the Walls Come Tumbling Down: Architects Expanded Liability under Design-Build/Construction Contracting," 17 J. Marshall L. Rev., (1984); and Michael J. Bond, "Rebuilding the Citadel of Privity," 30 Gonz. L. Rev. 221 (1994-95). See Trans State Airlines v. Pratt Whitney Canada,Inc., 682 N.E.2d 45, 48-55 (Ill. 1997) (Discussing history of economic loss doctrine).
The District Court in Connecticut had an opportunity to review this trend. Ins. Co. of North America v. Town of Manchester, 17 F. Sup.2d 81, 8687 (D. Conn., 1998). The Manchester case, noting that no Connecticut appellate court had directly addressed the economic loss doctrine in construction disputes, found that privity of contract is not necessary for the plaintiff surety to recover for economic loss in a negligence action. The case involved the reconstruction of the Main Street in Manchester, CT and its subsurface utilities. The parties were the owner of property, contractors, subcontractors and design professionals. There CT Page 1858 was no contract between the design professionals and the general contractor. The general contractor brought an action against the design professionals including a count for negligent performance of duty. The design professional's motion for summary judgment on the negligence count raised the issue: "Whether a cause of action sounding in tort and seeking purely economic losses against a design professional by a construction contractor, not in privity with the design professional, was recognized under the law of the State of Connecticut?" Id. 83. Referencing a number of trial court decisions and Coburn v. Lenox Homes, Inc., 173 Conn. 567
(1977), the district court in Manchester denied the motion for summary judgment. Coburn involved the subsequent purchaser of a house seeking recovery from a builder for the negligent installation of a septic system. Despite the lack of privity, Coburn found that the harm flowing to the subsequent purchaser was foreseeable to the builder and there was no reason why the builder/vendor should not "be liable for the effects of his negligence if they were foreseeable. Coburn v. Lenox Homes, Inc.,
supra, 173 Conn. 575-76. See Connecticut Printers Inc., v. Baker PerkinsPMC, Ltd. Civil No. H-86-1507 (PCD), (D. Conn., Feb 1, 1990) (Limitation of damages in a contract claim, limit damages in other counts sounding in tort). The claim of damages arose out of a faulty septic system in a single family home. Although the opinion discusses damages claimed, there is no reference to Coburn to claiming business type damages; loss of opportunity, loss profits. The damages claimed in Coburn appear to be those typically claimed in negligence actions; property damage and personal injury.
A number of Superior Court decisions have refused to apply the economic loss doctrine. Darien Asphalt Paving, Inc. v. Town of Newton, supra, Superior Court, Docket No. CV 98-04878; SCALP Motors, Inc. v. RevcoSystems International, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 97-034846 is (August 12, 1999, Melville, J.) (25 Conn.L.Rptr. 283) (1999 Ct. Sup. 11277); CarolinaCasualty v. 60 Gregory Boulevard, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV98-0169383 S (March 21, 2000, Hickey, J.) (26 Conn.L.Rptr. 685) (2000 Ct. Sup. 3080); City of Danburyv. Flaherty Giavara Associates, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 245246 (November 3, 1988, Schaller, J.) (4 C.S.C.R. 2); Reiner Reiner v. Connecticut National GasCorp., Superior Court, judicial district of Hartford, Docket No. CV 95-0551260 (December 12, 1995, Berger, J.) (1995 Ct. Sup. 8743). A number of these cases attempt to limit the application of Flagg Energy to product liability cases.
Despite the seeming trend in the United States toward rejecting the CT Page 1859 economic loss rule, a number of Superior Court judges have adopted the rule. This court adopted it on May 12, 1999 in this case in a unreported oral decision from the bench. It was adopted in a construction dispute involving the Amity Regional High School in Woodbridge, CT. AmityRegional School District #5 v. Atlas Construction Co., Superior Court, judicial district of Waterbury, Docket No. X06-CV99-0153388 S (July 26, 2000, McWeeney, J.) (6 Conn. Ops. 895); DeVillegas v. quality Roofing,Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 294190 (November 30, 1993, Freedman, J.) (10 Conn.L.Rptr. 487) (1993 Ct. Sup. 10380-6); UOP v. Andersen Consulting, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV 97-145753 (April 24, 1997, Lewis, J.) (1997 Ct. Sup. 4748) (applying Illinois law). Based on the factual similarity with Flagg Energy and the reasoning in the above cases, this court will continue to apply the economic loss doctrine.
Of the five counts sought to be stricken, four set forth tort allegations: Count 24, CUTPA by unfair acts ("attempting to use IVth Shea as a subterfuge to deceive Worldwide and conceal Varco's own unfair acts and practices recited herein"; "when it knew such representations to be false"; "coercing Worldwide into lending this money to Varco under duress"); Count 25, CUTPA by deceptive acts (same allegations as in Count 24); Count 29, Substantial Assistance/Aiding Abetting Liability ("Varco attempted to use IVth Shea as a subterfuge to deceive Worldwide and conceal Varco's own unlawful acts described herein." The allegations of Counts 24 and 25 are also restated in this Count 29); Count 30, Civil Conspiracy (the above language of Counts 24, 25 and 29 are restated in this Count 30).
These four counts set forth claims distinct from a contract, quasi contract or UCC claim. They are denominated torts by the plaintiff's complaint and utilize tort phrases in the allegations. If the economic loss doctrine is applied to this lawsuit, these four counts must fall as they allege pure tort.
The plaintiff further argues that in the event that the court adopts the economic loss doctrine, its amended complaint has pled exceptions to the doctrine. The plaintiff points to the following new allegations contained in their Second Amended Complaint as against VP: "Using Change Orders `squeeze' additional monies from Worldwide to help cover Varco's expenses related to the project"; "the value of the CLP Energy Incentives of which Worldwide has been deprived"; "Varco attempting to use IVth Shea as a subterfuge to deceive Worldwide and conceal Varco's own unlawful acts described herein"; "V.P. represented to Worldwide that CT Page 1860 they would issue to Worldwide a credit to account for the work not performed on the east lean to. Despite these representations, no credit has been issued"; and "Varco representing to Worldwide that Varco would reimburse Worldwide $11,000 for the cost of the pour stops, and IVth Shea directing Varco not to issue an $11,000 credit to IVth Shea, which credit was not passed on to Worldwide."
Other jurisdictions that recognize the economic loss doctrine have found a number of exceptions: (1) damages that were not reasonably foreseeable at the time of contracting. SNA Inc. v. Hartzell Propeller,Inc., No. 95-1397, 1996 WL 283646 (E.D. Pa. May 29, 1996); (2) damages that far exceed the plaintiff's contractual expectations, such as damage to property other than that property that was the subject of the contract. Laidlaw Waste Systems, Inc. v. Mallinckrodt, Inc.,925 F. Sup. 624, 636 (E.D. Mo. 1996); (3) defendant's actions that are independent of the defendant's breach of contract. Bradley Factor Inc.v. United States, 86 F. Sup.2d 1140, 1146 (M.D. Fla. 2000); and (4) in negligent misrepresentation where the defendant must be in the business of supplying information and the defendant must provide this information for the guidance of others in their business relations with third parties. Gerdes v. John Hancock Mutual Life Ins. Co., 712 F. Sup. 692,696 (N.D. Ill. 1989); See Trans States Airlines v. Pratt WhitneyCanada, Inc., 682 N.E.2d 45, 48 (Ill. 1987) (Discussing exceptions (1), (3) and (4)). Flagg Energy indecisively discussed the fact that there are exceptions to the economic loss doctrine. Flagg Energy Development Corp.v. General Motors Corp., supra, 244 Conn. 152.
The plaintiff's argue that its Second Amended Complaint fits within these recognized exceptions. Unfair and deceptive acts of squeezing additional money out of plaintiff by submitting false and improper change orders has been alleged. The plaintiff also alleges in the substantial assistance count, the failure to issue a $11,000 credit for pour stops and numerous discharges and overcharges for products and services not provided. As to the civil conspiracy count the plaintiff again points to the failure to issue a $11,000 credit for pour stops and the squeezing of additional money out of the plaintiff by submitting false and improper change orders. The plaintiff argues that the first three exceptions are applicable to these allegations. The plaintiff claims that these damages: (1) were not reasonably foreseeable at the time of contracting; (2) the harm far exceeded the plaintiff's contract losses; and (3) there are independent allegations of fraud and misrepresentation not connected with the defendant's breach of contract.
The plaintiff's Second Amended Complaint has alleged with the greatest CT Page 1861 specificity possible, the actual acts: (1) failure to give $11,000 pour stops credit; (2) failure to price properly, thus leading to discharging and overcharging; and (3) failure to give other contract credits. All of these claims are essentially contract claims, remedies for which the parties could have negotiated in their agreement. Plaintiff's contract contains an adequate source of remedy. These remedies were known at the time of the contract. These are not sufficient allegations of fraud.Seiling v. D'Esopo Co., Superior Court, judicial district of Hartford, Docket No. CV 96-0561422 (November 22, 1996, Wagner, J.T.R.) (18 Conn. L. Rptr. 271) (1996 Ct. Sup. 9583). None of the exceptions to the economic loss doctrine apply to the above allegations.
VP further argues that this lawsuit is not a construction contract dispute but more akin to a product liability action. Flagg Energy in footnote 46 referenced the product liability statute where it sets forth Connecticut public policy, that an action for commercial loss caused by a product may be brought only under the UCC. Although the product liability statute, General Statutes § 52-572n (PLA), has not been pled, VP argues that the essence of Worldwide's claim is in product liability. None of the defendants actually constructed the building. They had no contractual obligation to construct the building. The defendants were the designers, manufacturers and sellers of a product, prefabricated steel building components manufactured off-site and delivered to the site to be incorporated into a building that was constructed by contractors other than the named defendants.
Prior to 1984, commercial losses sustained by a plaintiff were "harm" under the PLA. Verdon v. Transamerica Ins. Co., 187 Conn. 363, 372
(1982). The statute was amended in 1984 to provide, "As between commercial parties, `harm' does not include commercial loss." General Statutes § 52-572m(d). Bosek v. Valley Transit District, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. CV92-039674 (December 10, 1993, Rush, J.) (9 C.S.C.R. 65) (1993 Ct. Sup. 10828). In 1984, the legislature also added a section to the PLA. "As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by title 42a, the Uniform Commercial Code." General Statutes § 52-572n(c). Flagg EnergyDevelopment Corp. v. General Motors Corp., supra, 244 Conn. 154 n. 46. There has, therefore, been a legislative policy determination that a distinction exists between a claim for commercial loss sustained by a commercial party and claims for personal injury, death or property damage. Bosek v. Valley Transit District, supra, Superior Court, Docket No. CV 92-039674. Loss of profits, consequential economic loss, CT Page 1862 interruption of business and other damages to business are commercial or economic losses as opposed to property damage and personal injuries.Smith v. Yankee Motor, Inc., Superior Court, judicial district of New London, Docket No. CV 92-523560 (August 15, 1994, Leuba, J.) (9 C.S.C.R. 880) (1994 Ct. Sup. 6939).
The type of loss claimed is a factor that distinguishes Coburn andManchester from this case. The Manchester court relied on Coburn's claim of "property damage." In this court's opinion, Coburn involves pure property and personal injury damages. The plaintiff was a residential homeowner suing the installer of a defective septic system installed under contract with his predecessor in title. There appears to be no commercial type damage loss in Coburn, such as lost profits or loss of the benefit of the bargain.
The Flagg Energy court also turned to the UCC to determine if it set forth any public policy consistent with the economic loss doctrine. Noting that General Statutes § 42a-1-103 preserves a broad range of common-law actions, including actions for fraud and misrepresentation, under certain circumstances, the remedies provided by the UCC and common-law are inconsistent. General Statutes § 42c-2-721 deals with UCC remedies for fraud and misrepresentation. "By implication, the intent of § 42a-2-721 is to make actions for fraud or misrepresentation presumptively inconsistent with post acceptance claims for breach of warranty." Flagg Energy Development Corp. v. General Motors Corp.,
supra, 244 Conn. 155.
The public policy established by the above mentioned statutes is further foundation for this court's belief that the economic loss doctrine will be fully adopted by our appellate courts and not just limited to the narrow facts of Flagg Energy.
This court strikes Counts 24, 25, 29 and 30 against the defendant, Varco-Pruden Buildings, Inc. This court will discuss Count 17 later.
The allegations of interference with business relations in Count 17 are more in the nature of a breach of contract claim. The damages sought are the loss of the benefit of a contractual bargain with Connecticut Light 
Power Company (CLP). The steel was to be manufactured to meet specifications that conformed to CLP quality design standards. This would have enabled the plaintiff to obtain energy incentives from CLP, a benefit worth hundreds of thousands of dollars. Although phrased in the form of "interference with contract," this count actually seeks a contract remedy. Thus, Count 17 is not in the nature of a tort claim but CT Page 1863 is a contract or quasi-contract claim. VP was alleged to have knowledge of the CLP insulation requirements, to have designed the job to meet those standards, failed to design and manufacture to those standards and as a result, cost the plaintiff the loss of the in future energy incentives. As such, Count 17 is not subject to the economic loss doctrine.
VP has asked to strike Count 17, negligent interference with business relations, both on the economic loss doctrine and other grounds. This court previously denied VP's Motion to Strike on May 12, 1999. This court held that Worldwide's complaint was sufficient to withstand the motion to strike. The complaint alleges that there is a contractual relationship between the plaintiff and a third party, who is not a party to this case, to wit, CLP. The complaint indicates the nature of that contract and the fact that the contract between the plaintiff and CLP was impacted. The complaint further alleges that Worldwide did not receive the energy incentives from CLP that it was entitled to had the building contract been properly performed.
Connecticut recognizes two causes of action for interference with contract: tortious interference and negligent interference. Blake v.Levy, 191 Conn. 257, 259 (1983); Ferrara v. Rogers, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 88-094066 S (September 11, 1990, Flynn, J.) (5 C.S.C.R. 738) (1990 Ct. Sup. 1741).
The Motion to Strike claims that Count 17 is a tortious interference claim. A tortious interference is an intentional or wilful interference with a contract. There must be an allegation of fraud, misrepresentation, intimidation, molestation or that the defendant acted maliciously. There must be allegations of some improper motive or improper means and that there was an injury to the holder of the contract. Robert S. Weiss Associates v. Wiederlight, 208 Conn. 525, 536
(1988). "The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification." PAR Painting, Inc., v.Greenhome O'Mara, Inc., 61 Conn. App. 317, 324 (2001); Daley v. AetnaLife Casualty Co., 249 Conn. 766, 805-06 (1999). The plaintiff is claiming negligent interference with contract. This is a separate and different claim than tortious interference. Blake v. Levy, supra,191 Conn. 259. The cases that have discussed negligent interference have stated, that there is no need for any intentional act to be alleged.Kakadelis v. DeFabritis, 191 Conn. 276, 279 (1983).
Privity of contract is necessary to sustain a claim for negligent CT Page 1864 interference with contract. Fidelity Casualty Ins. Co. v. Sears.Roebuck Co., 124 Conn. 227, 233-34 (1938). The plaintiff has alleged that it was the intended beneficiary of the contract. It has alleged the plaintiff and VP had a contract through the agent, the IVth Shea. These are sufficient allegations to satisfy the privity requirement.
After reviewing the Second Amended Complaint and the changes made therein with the prior amended complaint that was subject to the previously denied motion to strike, this court believes that Count 17 states a claim for negligent interference with business relations. Blakev. Levy, supra, 191 Conn. 259. This court finds that Worldwide has sufficiently alleged a claim in negligent interference with business relations.
This court has already decided this issue in favor of the plaintiff on May 12, 1999. Upon review, insufficient new information or legal arguments have been presented to persuade this court to change its May 12, 1999 ruling. "New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored." Suffield Bank v. Berman,228 Conn. 766, 774 (1994). "A judge should hesitate to change his own rulings in a case and should be ever more reluctant to overrule those of another judge." Breen v. Phelps, 186 Conn. 86, 99-100 (1982).
The Motion to Strike Count 17 is DENIED.
The Motion to Strike Count 24, 25, 29 and 30 is GRANTED.
SO ORDERED.
BY THE COURT,
TIERNEY, J.